CASE 8—PETITION EQUITY—SEPTEMBER 29.

## Smith, &c., v. Snowden, &c.

APPEAL FROM LEE CIRCUIT COURT.

1. IN AN ACTION BY THE GRANTORS TO SET ASIDE A DEED ON THE GROUND OF FRAUD AND UNDUE INFLUENCE the fact that a relation of trust and confidence existed between the parties is sufficient to throw upon the parties seeking to uphold the transaction the burden of showing the absence of all inequitable features, as well as that the grantors acted voluntarily, deliberately and with full knowledge of the nature and effect of their acts. And where such a relation existed a false recital in the deed as to the consideration is the strongest evidence of fradulent intent on the part of the grantees.

Smith,  &c.,  v.  Snowden,  &c.

Where father and mother executed conveyances of several tracts of the mother's land to two of their sons who lived with them and managed their affairs, each of the deeds reciting a consideration of a certain sum of money "cash paid in hand," in this action by the father and the children of the grantors other than the grantees (the mother being dead) to set aside the conveyances on the ground of fraud and undue influence, it appearing that the recital as to the consideration was false, not a dollar being paid or promised, this fact, in connection with the fact that the grantors were old, ignorant and enfeebled by disease, while the grantees were vigorous, aggressive and already in charge of the persons and of the property of the grantors, is sufficient to authorize the chancellor to set aside the conveyances without any other evidence of fraud or undue influence. And the grantees can find no relief in assuming the position, after the attack on the deeds was made, that the real consideration was love and affection and an agreement to care for the grantors during the remainder of their lives.

2. VACILLATING CONDUCT EVIDENCE OF WANT OF CAPACITY —Although the father, after joining in the action, had it dismissed as to him and afterward offered an amended petition again seeking to be made a party plaintiff, and asking the relief he had originally asked, which was rejected, and after joining in this appeal had it dismissed as to him, this vacillating conduct does not merit, as it would under ordinary circumstances, a refusal to hear his pleas, but is of itself evidence of want of mind and capacity.

RIDDELL & RIDDELL AND HUGH RODMAN FOR APPELLANTS.

1. The appellees having used undue influence in procuring the deed from their father and mother, who were old and mentally and physically infirm, and having exerted this influence to the prejudice of their crippled sister, the conveyance should be set aside on the ground of fraud. (Wilson v. Oldham, 12 B. M., 58; Boyd v. De La Montagreil, 73 N. Y., 502; Sears v. Shaefer, 6 N. Y., 268.)

2. Appellant should have been allowed to file his amended petition, which prayed that appellee be made to account for personalty appropriated by him after the mother's death.

3. The deeds containing false recitals of valuable considerations, appellees can not show by parol evidence that the real consideration was love and affection.

4. Burden is on appellees to show that the conveyance was free from fraud.

H. L. WHEELER AND J. B. WHITE FOR APPELLEES.

1. As the mother was, according to the proof, competent to convey her lands, and did do so, appellants can not recover. The proof shows

. that there was no fraud in the transaction, and that the consideration was sufficient.

2. Appellant Smith had already been provided for in the way of advancements, and appellees had not failed to care for the other appellants as was provided in the agreement as a part of the consideration. There is no cause shown for setting aside the deed.

3. Appellant James Snowden having voluntarily withdrawn his plea and testified that the conveyance was right and should stand, this court should not disturb it.

4. Property conveyed in order that the children may care for and support the aged parents should not be taken away at the instance of those who rendered no service in such care.

WILLIAM H. HOLT AND O. H. POLLARD ON SAME SIDE IN PETITION FOR REHEARING.

1. The condition of James Snowden at the time of the conveyance, and his conduct afterwards, matter not, as he did not own the land conveyed.

2. The consideration expressed is only *prima facia* evidence of its character, and a different one may be shown by parol. (Gordon's Heirs v. Gordon, 1 Met., 285; Davenport v. McCampbell, 17 B. M., 39.)

3. The *status quo ante* can not be had, and the conveyance should, therefore, be sustained.

4. The conveyance was made in accordance with a previously declared purpose of the grantor, and she afterwards repeatedly recognized the transaction.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In November, 1889, Lucy Snowden was the owner of certain tracts of land in Lee county, Kentucky, of the value of some six or seven thousand dollars. Her husband, James, had recently sold some three thousand dollars' worth of realty, a portion of the proceeds of which sale he still had, together with some stock and other personalty. These old people, the husband being some seventy-odd years of age and the wife a few years younger, were living on the wife's land. They were illiterate, ignorant and enfeebled by old age and disease, and greatly dependent, in the management of their affairs, on their sons, Arch and

David P., who lived with and cared for them.  Be-
sides these two sons there was another, Asa, whose
mental condition was below the ordinary average.
There was only one other child, a married daughter,
Margaret Smith, who had been a cripple since her
girlhood, and who lived with her husband and seven
children at some distance from her father and mother.
A few days before the date named above, the sons,
Arch and David, procured a surveyor and had the
lands of the mother run out, and deeds prepared
conveying the whole of them to themselves, Arch get-
ting about two-thirds and David the balance.   Their
mother may have had some knowledge of this pro-
ceeding, but the father, who at least had a life estate
in the lands, had no notice whatever of what was
being done.   Mrs. Smith and her husband were kept
in ignorance of it.   The old people, however, unhesi-
tatingly, and apparently voluntarily, signed and ac-
knowledged the deeds, the recited consideration in
one of them being five hundred, another three hun-
dred and a third five hundred dollars—all cash in
hand paid, the receipt of which was acknowledged.
The old lady, then afflicted with heart disease, died
in a few months thereafter.

This action was then instituted by the old man,
James Snowden, Asa and the daughter, Margaret,
and her husband to set aside the deeds by reason of
the imbecility and incompetency of the grantors, and
the fraud, deception and controlling influence of the
two grantees.   After the case was prepared, an order
was entered dismissing the action so far as James
Snowden was concerned.   This was on July 13, 1892.

On the 16th of July, 1892, James Snowden offered to
file his affidavit and moved to set aside the order of
dismissal.     He tendered an amended petition, which
appears to have been sworn to on July 13, 1892, in
which he again seeks to be made a party plaintiff and
claims the relief he had originally claimed.   His affi-
davit was to the effect that he had been persuaded by
his son Arch to withdraw from the suit.   The amend-
ment was rejected, and the case being submitted, the
court dismissed the petition.   The amended petition
was made a part of the record, and James Snowden,
together with the Smiths and Asa Snowden, have ap-
pealed to this court.   In this connection we notice the
verified plea of James Snowden, filed here October 28,
1893, directing the appeal to be dismissed, so far as he
is concerned, and this order has been made.

Whether, if living, the old lady would have followed
her husband in his rapidly changing and contradictory
positions in this action, we have no means of knowing.
We do know that after making the conveyances, she
denied having done so, and represented herself as in a
position to still distribute her estate equally among all
her children.   She appeared willing enough to shift
her position according to the company she was in.

In the consideration of this case, the learned chan-
cellor was doubtless guided by the general rule that
the plaintiff who seeks to set aside a deed of the char-
acter here involved, must take the burden, and make
out affirmatively a case of fraud or the existence of
undue influence.   As we have seen, so far as the proof
of any witness goes, there is nothing to show other-
wise than that the deeds were executed and acknowl-

edged freely and voluntarily. The conduct of the
officer reading them and taking the acknowlegement
is such as is usual and is entirely free from suspicion.
Nor does any witness testify to unsoundness of mind
on the part of the grantors or to the active operation
of any hurtful or undue influence.

But does this case fall within the class of cases in
which the burden is on the plaintiffs? It is not the
case of a gift from parent to child. No such con-
sideration as love and affection is hinted at. On the
contrary, the recited consideration is a pecuniary one
solely, and the falsehood, for such we find it to be,
is pushed to the extent of an assertion that the sum
named is "cash paid in hand," &c., when the proof
discloses that not a dollar was paid or promised; nor
is this a case of the execution of a will requiring the
exercise of no contractual capacity. It seems to us
that the relation of the parties is such, and the false
recitations of the deeds emphasize this opinion, as to
throw on the parties seeking to uphold the transaction
the burden of showing the absence of all inequitable
features, as well as that the parties acted voluntarily,
deliberately and with full knowledge of the nature
and effects of their acts. Mr. Pomeroy and Mr.
Story so state the rule.

The former says of such transactions: "When the
accompanying incidents are inequitable and show bad
faith, such as concealments, misrepresentations, undue
advantage, oppression on the part of the one who
obtains the benefits, or ignorance, weakness of mind,
sickness, old age, incapacity, pecuniary necessities and
the like, on the part of the other, these circumstances,

combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative." (Pomeroy's Equity, sec. 928.)

In the case under consideration the grantors were old, ignorant and enfeebled by disease; the grantees were vigorous, aggressive and already in charge of the persons and the property of the grantors. We may say in general that when such a relation exists the person obtaining the benefit must show, by the clearest evidence, that the transaction was freely and voluntarily entered into, and devoid of inequitable incidents. A most important feature in this case is the false recital of the consideration. These old people were themselves as clay in the hands of the potter. As to them, the question of consideration was immaterial, but it appeared important to the grantees to show to those equally and naturally interested in the partition about to be made of the estate, that a *bona fide* sale had been consummated for a valuable consideration. The recital of the false consideration carries with it the thought and purpose of a designing and intentional concealment of the truth, and this falsehood and concealment are the highest evidences of the fraudulent intent with which the writings were procured, not necessarily of actual but of constructive fraud, assumed in view of the relation of the superior contracting with the inferior, the independent with the dependent, the strong with the weak. The grantees, it seems to us, can find no relief in assuming the position, after the attack on the deeds was made, that the real consideration was love and affection, and an agreement to care for the grantors during the remainder of their lives.

. Smith, &c., v. Snowden, &c.

The intent in the procurement of the writings must be gathered from the recitals of the writings themselves, and the beneficiary will not be relieved of the necessary inference of intentional deceit on his part by asserting a consideration inconsistent with the one named in the writing. We may say generally that where the parties to a deed sustain fiduciary and confidential relations toward each other, or where one of the parties is subject to the influence of the other, the writing should contain a fair and truthful statement of the transaction. (See notes to section 928, Pomeroy's Equity.) The learned author last referred to says in such connection: "If the statement of the consideration is untrue, the instrument can not be upheld. The party seeking to uphold it, can not prove, in order to sustain it, that the actual consideration was partly that represented in the deed and partly something else, since this would be inconsistent with the consideration stated in the face of the instrument."

And authorities are cited to the effect that, "if a pecuniary consideration is stated in the deed, and is impeached, the party can not show and rely on the consideration of blood or love and affection" (Clarkson v. Hanway, 2 P. Wms., 203; Willan v. Willan, 2 Dow., 274,), though "if the recitals state a pecuniary consideration, and the operative part mentions love and affection as being in part the consideration of the deed, this discrepancy is not sufficient to raise a presumption of fraud." (Filmer v. Gott, 4 Bro. P. C., 230.) Without fully approving the doctrine quoted to the extent announced by these authorities, we may safely say that the existence of misrepresentation, con-

cealment and falsehood in material and important par-
ticulars in writings between parties occupying these
delicate relationships toward each other, affords the
strongest evidence of fraudulent intent on the part
of the superior contractor, and readily opens the way
for equitable interposition. The vacillating conduct
of the former complainant, James Snowden, does not
merit, as it would under ordinary circumstances, a
refusal to hear his pleas, but is of itself evidence of
want of mind and capacity.

In order that the deeds may be set aside, so far as
they may affect the present appellants, Asa Snowden
and the Smiths, the judgment below is reversed for
proceedings consistent herewith.