## Miller v. Taylor, et al.

(Decided June 16, 1915.)

### Appeal from Pike Circuit Court.

1. Deeds—Conveyance by Infirm Person.—The law looks with suspicion upon the transfers of property by persons mentally or physically infirm, to those having custody of them.
2. Fraud—Burden of Proof.—Ordinarily, the burden of proving actual fraud is on the party alleging it; but where fraud, from the fiduciary or confidential relation of the parties, is charged, the burden is on the person against whom the complaint is made, to show the fairness of the transaction.
3. Judgment—Finding of Fact by Chancellor.—Where the evidence is conflicting and the court is not convinced that the substantial rights of the appellant have been prejudiced, or where it merely has a doubt as to the correctness of the judgment, the finding of fact by the chancellor will not be disturbed.

J. S. CLINE for appellant.

J. P. HOBSON & SON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER—Affirming.

Nancy Taylor, a widow 71 years of age, owned a farm of about 75 acres of mountain land, upon which she resided, on Hunt's Branch, a tributary of the Levisa Fork of Big Sandy River, in Pike County. The farm is worth about $450.00.

Mrs. Taylor's husband had died on October 1st, 1912, leaving Nancy, his widow, and their eight children surviving him.

Nancy Taylor lived alone upon the farm, and her children lived in the neighborhood. Seven of them owned their homes, but the other daughter, Anna M. Miller, the appellant, and her husband, Ross Miller, lived upon a rented farm, a few miles distant from the home place.

Mrs. Taylor had a protracted illness in the summer of 1913, and having no person living with her upon whom she could rely to care for her, her daughter, Anna M. Miller, removed her mother, about the middle of May, from her own farm to the Miller farm. Mrs. Taylor continued to grow worse until she died, on July 6th, 1913. She had then been at Mrs. Miller's residence for seven weeks and five days, during which time Mrs. Miller had cared for her in every way possible, although her husband was bed-ridden with typhoid fever for at least a part of the time.

About a week or ten days before her death Mrs. Taylor sent a message to H. H. Thompson, a deputy county court clerk, through Ross Miller, her son-in-law, requesting Thompson to call upon her. Thompson responded by calling upon Mrs. Taylor on June 30th, and at her request Thompson wrote a deed conveying her farm of 75 acres, and all her household goods and personal property to Anna M. Miller, in consideration of the sum of $5.00 in cash, and the further agreement of Mrs. Miller to take care of her mother, Nancy Taylor, during her lifetime; to pay all her doctors' bills, burial and funeral expenses; and to furnish tombstones for the graves of Mrs. Taylor and her deceased husband.

The deed was recorded on July 8th, 1913; and, on July 21st, 1913, Henry Taylor, West Taylor, Aaron Taylor, Rebecca Stacey, Jane Miller, Lizzie Hurley and Lydia Kinser, children of Nancy Taylor, brought this action against their sister, Anna M. Miller, to set aside the deed to her from her mother, upon the ground that it had been obtained by the persuasion, overreaching and

undue influence of Anna M. Miller, and others at her instance, at a time when her mother, by reason of her affliction, did not have mind sufficient to understand the nature of her act.

The chancellor granted the relief asked, and cancelled the deed; but, by way of compensation to Mrs. Miller for her work and labor during the last illness of her mother, and for the funeral expenses and doctors' bills which she had paid, he allowed her to retain the personal property which she had received from her mother, amounting in value to about $200.00. Mrs. Miller appeals; and the plaintiffs prosecute a cross-appeal from so much of the judgment as allowed Mrs. Miller any compensation for services rendered her mother, or reimbursement for funeral and other expenses paid by her.

Upon the issue made as to the mental capacity of Mrs. Taylor at the time she executed the deed, all the witnesses say she was then rational, and that she was a woman of average intelligence. The proof further shows, without contradiction, that she was given no opiates of any kind, until about three or four days before her death, which was about three days after the deed was executed.

H. H. Thompson, the deputy county court clerk, who wrote the deed and took Mrs. Taylor's acknowledgment thereto, says Ross Miller, Anna's husband, passed his house two or three times, and told him that Mrs. Taylor wanted to see him; that he should carry paper and writing material with him; and that he finally called at the Miller home and wrote the deed. Thompson seems to have suspected that Mrs. Taylor was acting under the influence of some one, since he testified that after he wrote the deed, he asked her if any one had tried to influence her in any way to make the deed. He says, however, that Mrs. Taylor said no one had influenced her, and that she was making it of her own free will and accord.

Mrs. Hurley, one of the appellees, testified that she went to see her mother at the Miller residence on Saturday night—seven days before she died—the Saturday night before the Monday on which the deed was executed, and that her mother was then quite ill. She further said that her brother, Aaron Taylor, came to see his mother and said something about a land transaction he had had with his father, and that Anna Miller and Aaron "fell out and Aaron left." It elsewhere ap-

pears that Aaron Taylor owed a note for $75.00 which he had given his father in a land transaction.

Mrs. Hurley further testified that Anna Miller said to her mother that Mary Jane had said something about "knocking the hump off her back," and that her mother was worked up about it. Mary Jane was Mrs. Taylor's daughter-in-law.

Finally, Mrs. Hurley further said that she heard Anna Miller talking to her mother about the rest of the family, repeating what they had said they were going to do; and when the witness was asked what Anna Miller said the rest of the family were going to do, she answered that Anna said she heard they came and counted Mrs. Taylor's chickens, and had counted her quilts and other things; and that all this conversation was repeated to Mrs. Taylor and kept her disturbed during her last illness.

In further explanation of her answer, Mrs. Hurley said that Anna Miller did not say why they counted the chickens and bed quilts, but she only said they wanted Mrs. Taylor out of the way to get what she had; that that was what they were working for.

On the other hand, Henry Taylor and Aaron Taylor, sons of Nancy Taylor, and nominally though not real plaintiffs in this action, testified that their mother made no difference in her treatment of her other children after she went to Anna's house.

Anna Miller denied having made the statements attributed to her by her sister, Mrs. Hurley, as above recited, and says the conveyance was the result of her mother's own suggestion.

It cannot be said that the proof strongly supports the judgment of the chancellor; nevertheless, there was some evidence tending to show that Anna Miller had set her mother against the other children. The effect to be given this proof was for the chancellor to determine.

The rule in cases of this character is stated as follows, in McDowell v. Edwards, Admr., 156 Ky., 479:

"The law looks with suspicion upon the transfers of property by persons mentally or physically infirm to those having custody of them. Even when parties in good health stand in a confidential relation to each other, the burden is upon the stronger character who procures an advantage, to show that a transaction was fair; and relief will be afforded in equity in all such transactions

in which influence has been acquired and abused, in which confidence has been reposed and betrayed. Allore v. Jewell, 94 U. S., 512. The relief stands upon the general principle applying to all the varieties of relations in which dominion may be exercised by one person over another. Smith v. Kay, 7 H. L. Cas., 750; Tate v. Williamson, L. R., 2 Ch., 61.''

See also McElwain v. Russell, 11 Ky. L. R., 649, 12 S. W., 777; Talbott v. Bedford, 21 Ky. L. R., 897, 53 S. W., 294; Koger v. Koger, 29 Ky. L. R., 235, 92 S. W., 961; Smith v. Snowden, 96 Ky., 32; Hoeb v. Maschinot, 140 Ky., 330; Hall v. Orme, 146 Ky., 467, to the same effect.

In the Edwards case, *supra,* we further said:

''Ordinarily, the burden of proving actual fraud is on the party alleging it; but where fraud, from the fiduciary or confidential relation of the parties, is charged, the burden is on the person against whom the complaint is made, to show the fairness of the transaction. Shacklette v. Goodall, 151 Ky., 20.''

This the appellant has not done.

And, in Bazarth v. Banister, 143 Ky., 476, it was further held that where the grantee was the son of the grantor, who was enfeebled with age and lived with him, and had his confidence, only slight evidence of undue influence was necessary to authorize the setting aside of a deed on that ground.

The proof of undue influence in this case is slight, but, under the law which looks with suspicion upon death-bed transfers, it is sufficient to support the finding of the chancellor. He knew the witnesses, and the burden was upon the appellant to show the fairness of the transaction; and, under that salutary rule which requires this court not to disturb the finding of the chancellor where the evidence is conflicting, and the court is not convinced that the chancellor has erred to the prejudice of the substantial rights of the appellant, or has merely a doubt as to the correctness of his judgment, an affirmance must follow. Byassee v. Evans, 143 Ky., 415; Wathen v. Wathen, 149 Ky., 505; Bond v. Bond, 150 Ky., 392; Salmon v. Martin, 156 Ky., 309; McDowell v. Edwards' Admr., 156 Ky., 475.

Judgment affirmed upon the original and the cross-appeal.