### Kelly, et al. v. Fields.

(Decided January 18, 1916.)

#### Appeal from Harlan Circuit Court.

1. Deeds—Obtained by Fraud and Undue Influence—Burden of Proof. —Where a deed for a grossly inadequate consideration is made by an old woman to her son, the burden is upon the son to show by convincing evidence that it was the free and voluntary act of the grantor.

2. Deeds—Obtained by Fraud and Undue Influence—Evidence of.— When a suit is brought to set aside a conveyance upon the ground of fraud or undue influence, the court must of necessity look to circumstances rather than to facts, to the situation of the parties, to the conditions that surround them, to the attitude that they occupy toward each other, and the influences that control their actions, and, putting together these various things, determine whether the transaction ought to be upheld or not.

G. A. EVERSOLE and F. F. ACREE for appellants.

HALL & BOWLING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This is a suit brought by two of the children of Sallie Fields, deceased, to set aside a deed made by her to her son, Elijah Fields, on the grounds of undue influence and

want of mental capacity on the part of the grantor. The lower court dismissed the suit, and the plaintiffs below appeal.

The deed in question was made in April, 1912, and conveyed to the appellee, Elijah Fields, a tract of land containing about one hundred acres, for the recited consideration "of one hundred dollars and other valuable considerations." Sallie Fields at the time this deed was made was a widow, more than seventy years of age, and had been in bad health for a number of years. She died in March, 1913, and the grantee in the deed, to whom it was delivered when executed, did not lodge it for record in the clerk's office until July, 1913, some four months after the death of the grantor. Sallie Fields left surviving her four children, two daughters, the appellants, Araminta Kelly and Sarah Lyttle, and two sons, Ben Fields, and the appellee, Elijah Fields. Ben Fields sold his interest to his brother, Elijah Fields, and, therefore, he is not concerned in this controversy.

Some years before the deed was made, the two daughters of Sallie Fields moved away from the neighborhood in which their mother lived, but they continued to visit their mother, three or four times a year, and the evidence shows that the relations between them and their mother were of the friendliest character, and that she wanted all of her children to share equally in her estate at her death. It further appears that Elijah Fields lived within a few hundred yards of his mother's house, and that he was a prosperous, industrious, thrifty man, having a great deal more property than either his brother or his sisters.

Mrs. Fields lived in her own house by herself, but frequently the children of Elijah Fields stayed with her, and especially so when she needed attention. She was a thrifty, saving, industrious woman, had for several years before her death drawn a pension of twelve dollars a month, and was, in a small way, a money lender. Her pension money was more than ample to support her, and there is no evidence that Elijah Fields ever contributed anything to her support or maintenance or expended anything in taking care of her. Her health, as stated, had not been good for several years before her death, but notwithstanding this, she was generally able to get around and attend to what little business she had.

Naturally, she depended very largely on her son, Elijah, for advice and assistance in her little business affairs. The evidence shows that she would not make any trade or sale of cattle or sheep without first consulting with him; that he had large influence over her, and that she yielded to his judgment and advice, is testified to by several neighbors. This influence on his part, and this dependency on him on her part, was doubtless due to the fact that he was a thrifty, money-making fellow and a good business man, living within a few hundred yards of her, while her other children had moved away and, besides, were not successful in life.

The evidence further shows that Elijah went to a lawyer and had him write the deed, and then took a deputy clerk to the house of Mrs. Fields, where the deed was acknowledged. A witness whose integrity is not assailed, testified that Fields told him "That he was going to see Judge Hall and if the judge thought he could hold the land, he was going to have Sallie Fields to make a deed to it. And I says: 'Maybe Sallie won't make it to you, Lije.' He says: 'Sallie always done anything I asked her to do.' "

Another witness testified that in a conversation between them concerning why Lyttle and Kelly happened to move away Elijah said that "They had fell out and Ted Lyttle and Kelly should never have the wrappings of their finger."

There is no evidence that the recited consideration in the deed was ever paid except the evidence of Elijah Fields, which, of course, is incompetent, nor is there any evidence, direct or circumstantial, independent of his statements, that any consideration whatever, was ever paid by him for this land. But if it should be assumed that the one hundred dollars recited in the deed was paid, the evidence conclusively shows that the land at the time the deed was made was worth between thirty-five to fifty dollars an acre, the weight of the evidence being that it was worth fifty dollars. No substantial reason is assigned why this old woman, who was fond of her children, and who had said she wanted all of them to share equally in her estate, should have deeded this valuable piece of land, the only real estate she owned, to one of her children for the trifling sum of one hundred dollars—if she received this—and thus disinherit her two poor and dependent daughters, as well as her son, Ben.

The fact that Elijah, of his own volition, had a lawyer to prepare the deed and a deputy clerk to go and take the acknowledgment, at a time, too, when Elijah was present; and the further fact that after thus securing the deed, he kept it in his pocket until after his mother's death, furnish strong evidence that it was not fairly obtained.

The record shows that Mrs. Fields, although in feeble health, was a woman of apparently ordinary intelligence; but there are many circumstances pointing to the fact that she was largely under the influence of her son, Elijah, and disposed to do anything he said. It would be hard to point out any particular facts showing that he exercised over his mother undue or improper influence, or that under ordinary conditions she was not capable of disposing of her property. But the circumstances connected with this transaction all tend to show that Elijah, either by undue influence or by fraud, procured his mother to make this deed, when she would not have done so if left to her own free will and judgment.

In many respects the case is a good deal like Gross v. Courtley, 161 Ky., 152. In that case we find the following language very pertinent to this one: "When a deed is made under circumstances like those appearing in this case, there at once arises a strong presumption of undue influence on the part of the grantee, and this condition has induced the courts, without exception, to scrutinize with the utmost care gifts and conveyances made under circumstances that would seem to afford opportunity for the exercise of undue influence growing out of confidential relations or mental or physical weakness, and to put upon the person who obtains the favor the burden of showing that the gift or conveyance or favor of value, whatever it may be, was not obtained by any improper methods."

In Smith v. Snowden, 96 Ky., 32, the following pertinent observations may be found: "In the case under consideration the grantors were old, ignorant and enfeebled by disease; the grantees were vigorous, aggressive and already in charge of the persons and the property of the grantors. We may say in general that when such a relation exists, the persons obtaining the benefit must show, by the clearest evidence, that the transaction was freely and voluntarily entered into, and devoid of in-

equitable incidents." To the same effect is Miller v. Taylor, 165 Ky., 463.

When conditions such as are shown in this case exist, the burden is upon the grantee to show not only the fairness of the transaction, but that it was the free and voluntary act of a capable mind, and this we think Elijah Fields has failed to do.

Wherefore, the judgment is reversed, with directions to enter a judgment cancelling the deed.