## Kimmel v. Berresheim, et al.

(Decided February 6, 1917.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Deeds—Gifts—Evidence.—The existence of a relation of special trust and confidence between the grantor and grantee in a deed executed without valuable consideration, puts upon the grantee the burden of showing by clear, convincing and satisfactory evidence, that the deed was the voluntary and intelligent act of the donor; but where the evidence shows that the gift was at the insistence of the grantor, who was capable of understanding the nature of the act and of intelligently disposing of her property, and the grantee did not, in any way, influence her to make it, the deed will be upheld.

2. Deeds—Gifts—Evidence.—Evidence that the grantee, after the grantor had signified her intention to make the gift, asked the advice of his employers, of whom the grantor was a client, as to the advisability of accepting the gift, tends to show good faith on his part, rather than the contrary.

J. M. CHILTON for appellant.

ISAAC SHERMAN for appellee, J. P. A. Berresheim.

OSCAR O. BADER for appellee, Kentucky Title Savings Bank & Trust Company.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an action on the part of the residuary devisees under the will of Elizabeth Siebert to recover, from the appellant, a house and lot on Shelby Street, in Louisville, Kentucky, conveyed to him by deed of Elizabeth Siebert, on July 3rd, 1913, and recorded two days thereafter. It is charged that the property was a gift, procured by fraud and undue influence.

Mrs. Siebert was a member of the Catholic church, and had lived for many years in the property in question, and for many years had transacted all of her banking business with the Kentucky Title Savings Bank & Trust Co., and had invested her savings in the securities of that institution. About ten years previous to her death, she met the appellant, Kimmel, who was an employee of the above mentioned trust company. This acquaintanceship ripened into a great friendship upon her part. She always called upon him to transact her business with the trust company, and for several years

before her death, he would from time to time, at her request, visit her at her home, and later at the hospital, for the purpose of assisting her in the transaction of her business at the trust company. He also paid her taxes for her, upon one occasion at least, and possibly attended to some other similar matters for her. She seemed to have unbounded confidence in him, and asked and accepted his advice in the investment of her surplus funds. Her exact age is not shown, some of the witnesses testifying that she appeared to be in the sixties, others, that she was past seventy, one witness fixing her age at about seventy-five.

She had no family in this country, her relatives all being in Germany, and she was alone in the world. In 1911, she executed a will, in which she provided for the payment of $300.00 to her pastor, for masses for the repose of her soul, made bequests of $300.00 to each of several of her relatives in Germany, giving the remainder of her estate to the appellee, J. P. A. Berresheim, or his successor, as pastor and for the use and benefit of the church of which she was a member.

In the summer of 1912, she became almost totally blind, from cataracts, and was taken to Saint Anthony's Hospital, and the cataracts removed from her eyes by an operation, after which she returned to her property on Shelby Street, where she continued to reside until February, 1913, when she had an attack of pneumonia, and was again removed to Saint Anthony's Hospital, where she remained until her death, Nov. 23rd, 1913.

While she was in the hospital, a Mrs. Katie Hussey instituted suit against Mrs. Siebert for something like $1,800.00, for services which she claimed to have performed for Mrs. Siebert, in nursing and attention for several years, under the promise that she would be paid therefor by Mrs. Siebert, in her will, which she had learned was not done. Mrs. Siebert denied the performance of the services and the promise of compensation, and employed counsel to defend the suit. This action was pending at the time the deed complained of was made, and it was compromised, some time after Mrs. Siebert's death, by her executor, upon the advice of the residuary legatee, but upon what terms is not shown.

The property was conveyed to appellant without valuable consideration, and as a gift. The circumstan-

ces, as related by him, are, that she sent for him, while she was living at the hospital, and told him that she wanted to change her will in such way as to give him two thousand dollars, for the many kindnesses he had shown her, and that she requested him to send a lawyer to prepare the necessary testamentary paper; that he did not do so, owing to the absence from the city of the trust company's attorney, and that, in about a month, she again sent for him and asked why he had not sent the lawyer, and then told him that she had changed her mind, having concluded that the better course would be, to make him a deed, in her lifetime, to the Shelby Street property, as he might have trouble if she left him money by her will, and she did not want him to have any trouble; that she then requested him to have the deed prepared and brought to her for execution; that he thereupon had the attorney for the trust company prepare the deed, and that he and a Mr. Henry W. Stockhoff, a notary public and employee of the trust company, went to the hospital, where the deed was executed by Mrs. Siebert, before Mr. Stockhoff, and during the absence of appellant from the room.

Mr. Stockhoff testified, that he went with the defendant to the hospital, explained to Mrs. Siebert the reason for his call and also explained to her the deed; that she told him, "That she was a friend of Mr. Kimmel's and Mr. Kimmel's family; that Mr. Kimmel had done so much for her when she was in the bank, Mr. Kimmel had done a good many little favors for her and had never charged her anything; she said she had no relatives, and she had some money—she had this piece of property, and she was going to give the money to the infirmary, and she wanted to deed Mr. Kimmel this piece of property. She says: 'I want to give it to Mr. Kimmel, and if I make a will and give it to him there may be a squabble over it, and if I deed it to him that will be the end of it.' We sat there and talked a few minutes, and finally we departed for home." He says that Mr. Kimmel, at the time of the conversation, stepped behind a screen and, presumably, went into the hall.

While Mrs. Siebert was at the hospital, after she recovered from the attack of pneumonia, she was not there for treatment, but was making her home there. She was up and about, every day, conversing with the

patients and attendants, although she seems to have left the hospital but once, when she went with Sister Cyrella to the trust company, for the purpose of getting $100.00, which she gave toward the building of the chapel at the hospital. Just two days before her death, she added a codicil to her will, by which she gave $200.00 to the hospital, to be used in the purchase of vestments.

As to the condition of decedent's mind, five witnesses testified for appellee: Reverend Berresheim, Mrs. Katie Hussey, Dr. H. L. Rapp, Dr. B. J. Lammers and Sister Cyrella. They say she was quite old and feeble physically, and was continuously changing her mind; that she was an ignorant old woman, who had acquired her estate by the very closest and most pitiable economy. On the other hand, there is the testimony of Mr. Kimmel, Mr. Stockhoff, Dr. Dyer, Mrs. Fisher, Dr. Hume and Dr. Fallis. These witnesses state, that Mrs. Siebert was intelligent, had a normal mind, and was capable of making the gift complained of.

There is no evidence that Mr. Kimmel ever went about Mrs. Siebert or where she was, except when she sent for him, or that he practiced any fraud or undue influence upon her, in order to procure the deed. Upon the other hand, it is shown, from the deposition of Mr. Kimmel, taken by appellees, that the gift was unsolicited by him; that it was entirely voluntary upon the part of decedent, and upon her insistence, which is not contradicted by either testimony or circumstance, but which is corroborated by the testimony of Mr. Stockhoff, and by the testimony of Sister Cyrella, that decedent told her, before she made the deed, that she was going to convey the property to appellant, and informed her, after the deed had been made, that she had done so; and by the circumstance, that after the deed was made appellant collected the rents, and decedent never, at any time, complained of having made the deed, or expressed a desire to revoke it; and that, at the time she was at the hospital, she knew what she was doing, and was capable of intelligently disposing of her property, is further attested by the fact, that, shortly before she made the deed to appellant, she made a gift of $100.00 to the hospital, for a chapel, and that shortly before her death, and after the execution of the deed, she executed a codicil to her will, which is not attacked, and Sister

Cyrella testifies that decedent knew perfectly what she was doing, and was competent to do both of these things.

As stated by the chancellor in his opinion, the law of the case is epitomized in the 20th vol. of Cyc., pages 1217 and 1219, as follows:

"The rule is well recognized that a gift procured through means of fraud, duress or undue influence brought to bear upon the donor is void. The above rule is particularly applicable where confidential relations exist, as between parent and child, guardian and ward, attorney and client, principal and agent, patient and physician, and in such cases the law not only watches over the transaction of the parties with great and jealous scrutiny, but 'it often declares such transactions absolutely void, where, between other parties, they would be open to no exceptions. However, advice or even persuasion to make a particular gift is not *per se* fraudulent; there must be something more, something that amounts to imposition, a species of moral constraint that takes away the free agency of the donor, and substitutes therefor the will of the donee, . . . . before such transaction will be set aside.

"In the absence of evidence raising a suspicion of fraud or undue influence on the part of the donee, the fairness of a gift will be presumed, and the burden is on the one attacking the validity of the gift on that ground to show clearly that it was not the voluntary act of the donor. But where the circumstances are such as to raise a suspicion of fraud or undue influence, as where one of the parties is enfeebled by sickness or old age, and the relation between the parties is one of special trust and confidence, the burden is upon the donee to show by clear, convincing and satisfactory evidence that the gift was the voluntary and intelligent act of the donor."

As said by the chancellor, this court has repeated the rule quoted above time and again. Smith v. Snowden, 96 Ky. 32; Wilson v. Winsor, 24 Ky. Law Rep. 1343; Highland v. Highland, 24 Ky. Law Rep. 2242; Koger v. Koger, 29 Ky. Law Rep. 235; Hoeb v. Machinot, 140 Ky. 330. And these cases are referred to with approval in Shacklette v. Goodall, 151 Ky. 20, the court, in the latter case, however, indicating that an exception might be made, as in the present case, where the grantor is dead, and the suit is brought by others.

Although decedent was enfeebled by sickness and old age, and the relation between her and appellant may have been one of special trust and confidence, such as to place upon him the burden of showing by clear, convincing and satisfactory evidence, that the gift to him was the voluntary and intelligent act of the decedent, our reading of the evidence convinces us that he has met this test, and that the deed should have been upheld.

The chancellor attaches some importance to the fact, that, after Mrs. Siebert had signified to Kimmel an intention to make a gift to him, before accepting same he asked the advice of two of the officers of the trust company, as to the advisability of his accepting the gift, the chancellor saying, that the inquiry itself suggests a lurking suspicion, on the part of appellant, that the transaction might be questioned. This circumstance does not so impress us. Upon the other hand, it is quite convincing evidence to us that appellant had not sought to influence decedent to make the conveyance to him, and that it was her voluntary act, and tends to show good faith upon his part rather than the contrary.

For the reasons indicated, the judgment is reversed and cause remanded with directions to dismiss the petition.