## Sword v. Fields and Cross.

(Decided October 28, 1921.)

### Appeal from Pike Circuit Court.

1. Deeds—Validity—Burden of Proof.—The law looks with suspicion upon the transfer of property by persons mentally or physically infirm to close relatives or those sustaining a confidential relation toward the grantor or transferor, and in such cases the burden is upon the transferee or vendee to show by clear and convincing evidence that the contract was freely and voluntarily entered into and devoid of inequitable incidents.

2. Deeds—Cancellation.—The grantor was eighty years of age, was very feeble and had been bedridden for more than twelve weeks. She was unable to attend to necessary calls and had to be waited on and taken care of in the same manner as an infant. Her son, the grantee's father, had considerable influence over her and procured the clerk to attend to and prepare the deed and he himself suggested how it should be written, and the clerk delivered it to him without its ever being in possession of the grantor after the latter, with the assistance of others, went through the form of touching the pen when her mark, in lieu of her signature, was attached thereto; Held, that this evidence, together with other facts and circumstances appearing in the record, fully justified the cancellation of the deed.

PICKLESIMER & STEELE for appellant.

J. M. BOLLING and HOBSON & HOBSON for appellees.

Opinion of the Court by Judge Thomas—Affirming.

Matilda Cross owned a tract of land in Pike county (the acreage not shown) and on March 20, 1916, she went through the form of deeding it to her grandson, Elliott Sword, who was an infant about thirteen years of age, but she retained in the deed the right to control and occupy the land during her life and that of her husband, John M. Cross. The transaction was in the nature of a gift, the only consideration being "love and affection." On April 9 thereafter appellees and plaintiffs below, Louis Cross and Rebecca Fields (nee Cross), who are children of the grantor by a second marriage, filed this action in the Pike circuit court against the grantee in the deed, alleging that at the time of its execution the grantor was feeble in mind and body and was old and greatly infirm and did not possess mental capacity sufficient to execute it, and that she was unduly influenced and overreached by Moses Sword, the father of the grantee and who is her son by her first marriage, to execute it, and they prayed for its cancellation. The answer denied the allegations of the petition, which was filed October 24, 1917, and in the following June, after some of the proof had been taken, the then defendant died intestate and without issue, and the action was revived against his father and the only heir, the appellant Moses Sword, and the cause progressed to final judgment against him.

After the death of the grantee, Rebecca Fields, one of the plaintiffs, filed a motion in the cause asking that the action be dismissed in so far as she was concerned, because she did "not desire to prosecute the said action against the defendant or have anything to do with the said prosecution," but the record fails to show that the court ever acted on it. Additional proof was taken after the reviver and upon final submission the court sustained the prayer of the petition and cancelled the deed, from which judgment appellant appeals.

The law is that transactions of this kind between near relatives or those occupying a confidential relation to each other will be closely scrutinized, and the burden is upon him who claims thereunder to show "by the clearest evidence that the transaction was freely and voluntarily entered into and devoid of inequitable incidents." Watson v. Watson, 190 Ky. 270; Kelly v. Fields, 167 Ky. 796; Miller v. Taylor, 165 Ky. 463; McDowell v. Edwards, 156 Ky. 475; Bozarth v. Banister, 143 Ky. 476;

Smith v. Snowden, 96 Ky. 32, and a host of other cases from this court, which might be cited.

The grantor was close to 80 years of age at the time of the alleged execution of the deed in contest, and she had been bedridden for more than twelve weeks prior to that time, and was upon her deathbed at the time and lived but little more than two weeks thereafter. It is shown that she suffered considerable pain, and that she was practically helpless; her simplest wants and natural necessities had to be performed by others with the same care and attention required by infants. She had partially raised her grandson, the grantee, whose mother died while he was an infant, and of course was very much attached to him, and according to some of the witnesses, she stated on a number of occasions that she intended to give him some of her property. The deputy clerk, before whom the deed was supposed to be acknowledged and who prepared it in the room on the day of its alleged execution, was procured by appellant, Moses Sword, who also had some members of his family present at the time, and they testified that the mind of the grantor at the crucial moment was as good as it ever was. A friend of the appellant, who was an enemy of the plaintiff, Louis Cross, and who was also accidentally present, testified substantially the same. However, there were others present in the mountain cabin at the time and they testified that Moses Sword did all the talking to the deputy clerk and dictated to him the boundaries of the land and that the grantor remained speechless on her deathbed with her eyes closed, and that the clerk lifted her hand to the pen when the mark was made in lieu of her signature (she being unable to write), by which she divested herself of the fee simple title to her land. The latter testimony is not seriously contradicted further than some of the witnesses say that the grantor reached out her hand and touched the pen, and only one or two of them claim that she ever spoke throughout the entire time, and then only to name the beginning corner of the description. The deed was never in the hands of the grantor, it being delivered to Moses Sword by the clerk after he had attached his certificate thereto.

Some of the witnesses who testified in the cause took as many as three hitches at it, deposing first for one side and then for the other. Among those so testifying was the deputy clerk, whose deposition was first taken by the plaintiffs, and he then said that it was at the instance

of Moses Sword that he went to the home of the grantor and performed his part in the legal tragedy. In that deposition he stated, ''I don't think she (grantor) ever spoke, if she ever spoke during the time I wrote the deed, I don't remember it,'' and further, ''I can't swear positively that she touched the pen, but I thought she did. I couldn't say that she acknowledged it, or didn't acknowledge it.'' He further testified in that deposition that the grantor gave him no directions as to what he should do with the deed and he handed it to Moses Sword. In his second deposition taken by defendant he modified his first one *only* to the extent of saying that, ''If I hadn't thought that she touched the pen I would have kept on until she did. . . . I know she reached her hand out, and I thought she had hold of the pen.'' But he states in that deposition that he neither asked Mrs. Cross if she acknowledged the deed nor did she at any time expressly say so, and that he made his certificate solely because, as he thought, she touched the pen when her mark was made to the deed.

It is shown that Moses Sword had considerable influence with his mother and, as above shown, his half sister, the plaintiff, Rebecca Fields, offered to dismiss the suit so far as she was concerned after he, as heir of his son, became the sole beneficiary under the deed, and that action on her part was superinduced, according to her testimony, by the importunities of her half brother. The grantor, as shown by the record, had previously given to the present defendant and to the plaintiffs each a small tract of land and nothing appears to show that she was any less attached to the children of her second marriage than she was to defendant and his son, the grantee in the deed.

There are other facts and circumstances appearing in the record and which bear to some extent upon the issue involved, but which we do not deem it necessary to relate, since we are convinced that Mrs. Cross knew as much about the number of stars in the ''Milky Way,'' or who, if any one, was on the top of Pike's Peak at the time, as she did about what was going on in the room at the time of the preparation and alleged execution of the deed; and, of course, it results that, even without the assistance of the findings of fact by the chancellor, we should hold that his judgment was correct, and it is, accordingly, affirmed.