## Halcomb v. Halcomb.

(Decided June 18, 1929.)

G. A. EVERSOLE for appellant.

C. B. SPICER for appellee.

Opinion of the Court by Judge Clay—Affirming in part and reversing in part.

On September 7, 1922, Caner Halcomb and wife, and Celestia Hood and her husband, for a cash consideration of $900, sold to Calvin Halcomb, their brother, a three-sevenths interest in a 75-acre tract of land situated on Poor fork of Cumberland river in Harlan county. Of the interest so conveyed Caner Halcomb conveyed one-seventh and Celestia Hood two-sevenths, one of which she had acquired by deed from her brother, James Lee Halcomb. On September 19, 1922, Nancy Halcomb, the mother of Calvin Halcomb, in consideration of $1 cash, sold and released unto him the three-sevenths of the tract of land theretofore conveyed by Caner Halcomb and wife and Celestia Hood and her husband. On March 19, 1927, Nancy Halcomb, for the recited consideration of $500 cash, sold and conveyed to Calvin Halcomb the entire 75 acres, with the exception of a life interest in the house, garden, and orchard.

This action was brought by Nancy Halcomb to set aside the deeds of September 19, 1922, and March 19, 1927, on the ground of mental incapacity and undue influence. On final hearing the court declined to cancel the deeds, but awarded Nancy Halcomb a lien on the land for $480. She appeals.

The record discloses the following: The land in controversy was purchased originally by E. J. Halcomb with the proceeds of a tract of land in Perry county, which Nancy had helped him to buy. They had then and have now four sons, Esquire, James Lee, Calvin, and Caner, and three daughters, Celestia Hood, Hannah Miller, and Becky Lane, the youngest being about 23 years of age. About the year 1914 Nancy and her husband separated. In the same year her husband conveyed the land in controversy to his son, Esquire Halcomb, in exchange for certain houses and lots. Not long thereafter, Esquire Halcomb conveyed the land to his mother for the sum of $400. Of this sum Nancy paid $105, while the balance was paid by Calvin and Caner, but, as Nancy claims, with stock or produce raised on the farm. It also appears that Celestia Hood helped to discharge a lien on the property. Although the fee-simple title had been conveyed to Nancy, the land was considered "heirship" land; and it was generally regarded by all of them that each of the seven children had a one-seventh interest in

the property. Carrying out this notion the deed of September 7, 1922, from Caner Halcomb and wife and Celestia Hood and her husband, conveying a three-sevenths interest in the land to Calvin, was executed. Shortly thereafter Calvin was advised by Dave Creech, a notary public, that the deed from Caner Halcomb and Celestia Hood was of no benefit to him. He then told his mother what Creech had said, and his mother agreed to make his title good. Thereupon she executed the deed of September 19, 1922. Later on she executed the deed of March 19, 1927. Calvin had the two deeds prepared and paid the fees of the officer taking the acknowledgments. At the time he lived within a few yards of his mother's home, and he and his brother Caner were his mother's chief dependence. Not only so, but he was generally regarded as the leading member of the family. At the time of the conveyance Nancy had no other property, and could neither read nor write. She says that she would not have made the deeds had not Calvin persuaded her to do so, and she executed them ''just for the lack of sense.'' She received nothing for signing the release deed, and the only part of the consideration for the deed of March 19, 1927, ever paid was the sum of $20. She admitted that Calvin had sent her $15 a month for 17 months during the War, and that he had been very good to her. It further appears that the consideration of $500 stated in the deed of March 19, 1927, was merely nominal and was not intended to be paid. Nancy further claims that the other children wanted her to make a deed to them for part of the land, but Calvin did not want it done. Calvin claims that he paid $900 for Caner's interest in the place, and then bought out Celestia Hood's interest for $450. When he told his mother that Creech had said that he got no title from them she said: ''I will go tomorrow and have the release deed made.'' He further claims that, as part of the consideration for the second deed, he agreed to support his mother during the balance of her life. This she denied. The value of the land was fixed at from $800 to $6,000.

Here the transaction was between mother and son. She was old, infirm, and inclined to look to him for guidance. He was young, active, and vigorous, lived within a few yards of his mother, and was regarded as the leading or dominant member of the family. In view of the confidential relationship, and attendant circumstances, the burden was on the son to show that the transactions

were freely and voluntarily entered into and devoid of inequitable incidents. Smith v. Snowden, 96 Ky. 32, 27 S. W. 855, 16 Ky. Law Rep. 353; Kelly v. Fields, 167 Ky. 796, 181 S. W. 657. With respect to the first deed of September 19, 1922, we think this burden was fairly met. The children of Nancy Halcomb helped to pay for the land. Though the legal title was conveyed to her, both she and the children were of the opinion that the property belonged to all of them. Acting on this belief Calvin purchased the interests of his brothers and sister and paid a substantial consideration therefor. Though Nancy denies it, Calvin says that she suggested that he make the purchase. Whether this be true or not, it is clear that the transaction took place with her knowledge and consent. When informed of the fact that the deed from Caner and wife and from Celestia Hood and her husband passed no title to Calvin, Nancy, for the purpose of giving effect to that deed, executed the deed in question. Though uneducated, her deposition shows Nancy to be a woman of good common sense, and a careful consideration of all the evidence leads to the conclusion that she made the deed freely, voluntarily, and with full appreciation of its consequences, and that the transaction was devoid of inequitable incidents. It follows that the court did not err in refusing to set the deed aside.

With respect to the deed of March 19, 1927, the situation is different. It was not made for the purpose of giving effect to any conveyance by any of Nancy's children to Calvin. At the time of the conveyance the land in question was worth at least $1,500, and Nancy's remaining four-sevenths were worth over $800. Nancy owned no other property. Though the deed recites that the consideration of $500 was paid, as a matter of fact it was not paid and never was intended to be paid. On the contrary, the consideration was regarded by both Nancy and Calvin in the same light as a consideration of $1. Therefore the case is one where a mother of advanced years conveyed practically all of her property to her son without any consideration whatever. In the circumstances it hardly can be said that the burden of showing the fairness of the transaction was met by Calvin. On the contrary, the unfairness of the transaction stands out in such bold relief that there is no escape from the conclusion that it was the result of undue influence. It follows that instead of awarding Nancy a lien on the property

for $480, the court should have set aside the conveyance of March 19, 1927.

Judgment affirmed in part, reversed in part, and cause remanded, with directions to enter judgment in conformity with this opinion.