## Woods v. Madden's Adm'x.

April 20, 1943.

Gladstone Wesley and Wesley & Son for appellant.

John S. Cooper for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Reversing.

This action was begun by the filing of a petition in equity by the administratrix of Elmer Madden against W. L. Madden. The petition alleged an oral contract between W. L. Madden and his son, Elmer, pursuant to which the latter was to board and care for his father and to be compensated by the conveyance of a forty-acre farm. The petition asserted the invalidity of the contract and sought enforcement of a lien on the land for $1,500, the alleged value of the board and services furnished pursuant to the contract.

W. L. Madden answered, denying that he was the owner of the land and denying the contract alleged. The answer further pleaded that the contract was that Elmer was to have the proceeds from the farm during such time as W. L. Madden resided with him and that he had received the proceeds and had in various ways been more than compensated for any board furnished and services rendered.

W. L. Madden died during the pendency of the action. The appellant, Myrtie Woods, his daughter, filed an intervening petition, which was made a cross-petition against appellee, pleading that the farm had been conveyed to her by W. L. Madden in consideration of her assumption of his liability as surety on Elmer Madden's note for $100 and her agreement to board, clothe and care for him during the remainder of his life.

Appellee attacked the deed on the ground that W. L. Madden was of unsound mind at the time it was executed and also on the ground that it was obtained by the exercise of undue influence. By agreement the action proceeded to trial solely on these issues. No order was made transferring the action to common law nor was there any order providing for an issue out of chancery but the parties treated and tried it as a common-law action.

The trial court ruled that the burden of proof was on appellant and her evidence was accordingly introduced first. However, the jury were instructed to find the deed valid unless they believed that at the time of its execution W. L. Madden was of unsound mind or that its execution was obtained by undue influence. The jury found the deed invalid and from the judgment entered on that verdict this appeal is prosecuted.

Appellant contends, first, that error was committed in imposing the burden of proof on her but it is our conclusion that if error was committed in this particular such error was not prejudicial to appellant's substantial rights. While appellant was required to proceed first with the introduction of evidence, the risk of nonpersuasion of the jury was imposed upon appellee by the instructions and appellant had the closing argument. Cases in which reversals were ordered on account of error in assigning the burden of proof have been those in which the party entitled to the burden was deprived of the

closing argument. See O'Connor & McCulloch v. Henderson Bridge Co., 95 Ky. 633, 27 S. W. 251, 983; Louisville & N. R. Co. v. Hargis, 230 Ky. 806, 20 S. W. (2d) 991.

It is next contended that the evidence was insufficient to justify a submission to the jury. It is our conclusion, however, that there was sufficient evidence of unsoundness of mind to justify a submission on this question. Undoubtedly, the preponderance of the evidence indicated that W. L. Madden was of sound mind when the deed was executed. Seventeen witnesses, all of whom had ample opportunity to know, testified that his mind was normal and sound. One of these witnesses was a physician. One was an attorney who prepared the deed and who testified that the grantor and appellant came to his office for the purpose of having the deed drawn and that Madden fully understood the transaction and that his mind was normal. One of W. L. Madden's brothers and several other witnesses testified that he told them on the day the deed was executed that he had conveyed the land to Myrtie, his daughter, and that he wanted her to have it.

However, five or six witnesses testified that in their opinion the grantor was of unsound mind when the deed was executed. These were witnesses who had opportunity to see and observe him, both before and after the execution of the deed, and several of them related incidents indicating mental unsoundness on which they based their opinions, such as the failure of Mr. Madden to recognize persons well known to him and other incidents indicating mental aberration. While, as indicated, the evidence clearly preponderated in favor of competency, we have concluded that the evidence was sufficient to justify a submission on this issue.

However, there was no evidence whatever of undue influence and the trial court was in error in submitting this issue to the jury. For the purpose of determining the correctness of the instruction we must, of course, assume that the jury found the deed invalid on account of undue influence. It is true that we have frequently held that transactions of this kind between near relatives or those occupying a confidential relation to each other will be closely scrutinized and that the burden is upon the grantee in such a deed to show that the transaction was freely and voluntarily entered into and devoid of in-

equitable incidents. Sword v. Fields and Cross, 192 Ky. 629, 234 S. W. 202; Watson v. Watson, 190 Ky. 270, 227 S. W. 270; Kelly v. Fields, 167 Ky. 796, 181 S. W. 657. And, as said in McDowell v. Edwards' Amd'r, 156 Ky. 475, 161 S. W. 534, 535, "the law looks with suspicion upon the transfers of property, by persons mentally or physically infirm, to those having custody of them." But it has never been held that the mere fact that a parent resided with a child to whom a deed was made was in itself sufficient to justify a finding that the deed was invalid. The true rule is that where a parent enfeebled by age resides with a child who has his confidence, only slight evidence of undue influence is necessary to authorize the setting aside of a deed on that ground. Bozarth v. Banister et al., 143 Ky. 476, 136 S. W. 902.

In the case before us the grantor resided with his daughter to whom the deed was executed, but the evidence of the attorney who prepared the deed makes it rather clear that no undue influence was operating on the grantor at the time of its execution, as does also the testimony of the witnesses to whom the grantor talked on the day the deed was executed. In addition to this evidence a brother and two nephews of the grantor testified that he stayed at their house for a period of two months after the deed was executed (he lived for more than six months after its execution) and talked to them about the deed and stated that appellant had been good to him and that he wanted her to have his property. Appellant met the burden of establishing that the deed was not obtained by undue influence upon her part in the absence of any evidence whatsoever of undue influence and where appellee's evidence did not establish that the grantor was in an enfeebled or infirm condition. We think, therefore, that the evidence was wholly insufficient to justify a submission of the case to the jury on the question of undue influence.

Reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.