## Murray v. Thomas.

(Decided November 11, 1927.)

### Appeal from Warren Circuit Court.

1. Deeds.—In action to set aside deed from decedent on ground that decedent at time it was executed was mentally incompetent, weight of evidence held to show that at time deed was executed decedent was of sound mind and capable of understanding nature and effect of instrument.

2. Deeds.—Generally, where grantor is old and physically infirm, and is in custody of grantee, burden is on grantee to show that conveyance was freely and voluntarily made, with full understanding of its consequences.

3. Deeds—In action to set aside deed by decedent on ground that at time it was executed decedent was influenced by grantees, preponderance of evidence supported finding that decedent living with grantee was not influenced by grantees, who were not present at time deed was made.

J. F. DENTON and W. R. GARDNER for appellant.

RODES & HARLIN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

B. W. Thomas died a resident of Warren county in August, 1924, leaving as his only heirs at law the ap-

pellee W. F. Thomas, a son, and the appellant, Beverly Murray, a grandson. He was 81 years old when he died. On March 3, 1923, he executed a will bequeathing all of his personal property to his son, W. F. Thomas, and on the same day be conveyed by deed all of his real estate to the appellees W. F. Thomas and Kate Thomas. Kate Thomas is the wife of W. F. Thomas. The property so bequeathed and deeded was worth approximately $30,000.

This action was instituted in the Warren circuit court to set aside the deed on the ground that B. W. Thomas, at the time it was executed, was incapable mentally of understanding and appreciating the nature or effect of the instrument which he then signed and acknowledged, and that he was unduly influenced by the grantees or one of them to execute it.

Appellant lived in the home of his grandfather from the time he was a small child until he married. A short time before his marriage, the decedent had litigation with John Potter and others over a passway, and the feeling between him and the Potter family became very bitter. Appellant married a niece of John Potter. The decedent was opposed to the marriage, but made no effort to prevent it other than to express his disapproval. When the appellant married, he left his grandfather's home and ceased speaking to him. During the next few years he and his wife lived in another section of Warren county and in Indiana and Illinois. He only visited his grandfather's home on one occasion; that being to attend his mother's funeral who had been residing with her father.

Decedent's son, A. J. Thomas, a bachelor, who was residing with his father, died in 1923, leaving some real estate and a small amount of personal property. The decedent, being the sole heir of his son A. J. Thomas, took charge of the latter's property, but did not qualify as administrator of his estate. Appellant, claiming that the estate of A. J. Thomas was indebted to the estate of appellant's mother for services rendered during her lifetime, secured the appointment of Roy Thomas as the administrator of the estate of A. J. Thomas. Upon learning of the appointment of Roy Thomas, the decedent employed an attorney and filed a motion to set aside the order appointing Roy Thomas administrator of the estate of A. J. Thomas, and he asked that he be appointed as such administrator. Roy Thomas filed a response, in which he alleged that decedent was mentally incompetent.

At a hearing before the county judge, the appellant testified that his grandfather was of unsound mind and incapable of transacting business. The decedent testified in his own behalf and was subjected to a severe cross-examination. A number of persons who were present at that trial, including the county judge and the attorneys, one of whom represented Roy Thomas, testified in this case that the decedent exhibited no signs of mental incompetency, but was able to give, and did give, a minute and detailed description of all of his property, and demonstrated that he was thoroughly capable of transacting business. The county judge sustained decedent's motion, and removed Roy Thomas as administrator of the estate of A. J. Thomas, and appointed decedent as such administrator.

Two days after the trial in the county court, decedent sent for an attorney and directed him to prepare his will and the deed which is the subject of this litigation. At the time the deed was prepared, he was living at the home of the appellees, having moved there after the death of his son A. J. Thomas. The appellees were not at home when the will and the deed were prepared and executed. Although the decedent had on a number of occasions expressed the opinion that he had been mistreated and neglected by his grandson, he at no time indicated that he intended to disinherit him until after the trial in the county court at which his grandson and a number of the Potter family testified that decedent's mind was unsound.

The evidence relating to the mental capacity of the grantor is voluminous. It discloses that he had suffered from melancholia on two occasions a number of years before the deed in question was executed, and had received treatment in two or more sanitariums. The physicians who treated him on these occasions testified that he had fully recovered and was thereafter competent to take charge of and manage his estate. One of these physicians had a conversation with him on the day the deed was executed. A number of attorneys who had represented him in various matters after his release from the sanitarium as well as attorneys who had represented opposing parties testified that he was mentally competent to appraise his property and understand the consequences of his acts in relation thereto at the time the deed in controversy was executed. A number of his neighbors who had busi-

ness transactions with him about that time testified to the same effect.

A number of witnesses testified for appellant as to the decedent's mental incapacity, and expressed the opinion that he was incapable at the time the deed was made to appraise his property and understand the consequences of his acts in relation thereto. Practically all of these witnesses, however, based their opinions upon things that decedent did and said when he was suffering from melancholia many years before. The great weight of the evidence, however, is to the effect that at the time the deed was executed the decedent was of sound mind and capable of understanding its nature and effect.

There is little if any evidence tending to sustain the allegation of undue influence. The only evidence relied on by appellant to sustain his contention on this point is that showing that appellees were absent from their home when the deed was executed and that decedent, when he was first informed that Roy Thomas had been appointed administrator of the estate of A. J. Thomas, made no objection, but changed his mind after consulting with his daughter-in-law, the appellee Kate Thomas. The deed was executed on Saturday afternoon. Appellees lived several miles from Bowling Green, and it is shown that it was their custom to drive to town on Saturday afternoons. The decedent requested a neighbor to go to Bowling Green and bring his attorney to the appellees' home, and there is no evidence showing that appellees knew of his intention to execute the will and deed on that day.

The general rule is that, where a grantor is old and physically infirm and is in the custody of the grantee, the burden is on the grantee to show that the conveyance was freely and voluntarily made, with a full understanding of its consequences. Price v. Meade, 182 Ky. 814, 207 S. W. 695.

Conceding that the circumstances in this case are sufficient to put this burden on the appellees, the preponderance of the evidence supports the chancellor's finding that the decedent was not influenced in what he did by either of the appellees. Neither of the grounds relied on by the appellant is sustained by the evidence.

The judgment is accordingly affirmed.