## Price, et al. v. Meade, et al.

(Decided January 21, 1919.)

### Appeal from Lawrence Circuit Court.

1. Deeds—Validity—Undue Influence.—In an action to set aside a deed on the grounds of fraud or undue influence, the burden is upon the grantee to show that the transaction was fair and free from fraud and undue influence, if it appear that the grantor is an aged and infirm person, and that the grantee is a young, vigorous person, and the consideration is inadequate.

2. Deeds—Validity—Undue Influence.—Where there exists between two or more persons a relation of confidence and trust by which one exerts such an influence over the judgment of the other as to subvert the latter's will and independence, a conveyance by the latter to the forn will be set aside as fraudulent upon seasonable complaint.

W. D. O'NEAL for appellants.

JOHN W. WOODS for appellees.

Opinion of the Court by Judge Sampson—Affirming.

Uncle Noah Meade, on March 3, 1911, executed a deed to his wife, Mary Elizabeth Meade, for a certain part of his farm containing about 175 acres, located near Richardson, Lawrence county. On March 17th following, he executed two deeds to his stepsons, Hercie Price and Iney Price, for the balance of said boundary of land. The consideration recited in the deed to his wife was love and affection; in the deed to Iney Price was $18.00, and in the deed to Hercie Price was maintenance and support for Meade and his wife. Hercie Price and Iney Price are sons of Mrs. Mary Elizabeth Meade by a former husband. Uncle Noah Meade had been married twice. By his first wife he had several children, two of whom survive him and another left children, to-wit: Simon Maxwell Meade and Lydia Alice Meade, plaintiffs herein. Some years before his death Uncle Noah conveyed to his son Milton Meade a boundary of land as Milton's part of his father's estate. He gave nothing whatever to his daughter, Mrs. Jane Meade Bartlett, nor to his grandchildren, Simon Maxwell Meade and Lydia Alice Meade. Noah Meade died June, 1915, and this action was instituted in the Lawrence circuit court in February, 1916, to cancel the three deeds above mentioned on the ground that Noah Meade, at the time of their execution and delivery, was incapable mentally of understanding the nature, contents and effect of the writings, or to do any business, and that he was overreached and unduly influenced by the grantees in the execution thereof. Issue was joined and the plaintiffs took the deposition of eighteen witnesses while the defendants called twenty-five witnesses. It was largely a question of fact, and the chancellor, upon hearing, decreed a cancellation of the three deeds, awarded the widow, Mrs. Mary Elizabeth Meade, homestead in the lands and adjudged the cost against the appellants.

The only questions necessary for this court to consider are two of fact: (1) Was Noah Meade, at the time he executed the deeds, March, 1911, capable mentally of understanding and appreciating the nature and effect of the instruments which he then signed and acknowledged? If he was not, then the chancellor correctly adjudged a cancellation of the three deeds; but if he was mentally able to understand and appreciate the nature and effect of the instruments, the court was in error in decreeing a cancellation, unless (2) the grantor was unduly influenc-

ed by the grantees, or some one of them, to the extent that his free agency was destroyed and he was constrained to do against his will that which he would not otherwise have done. Noah Meade, at the time of his death, was past eighty years of age; the grantees, Iney and Hercie Price, were vigorous young men; the widow was some twenty years younger than her husband. The grantor was about seventy-seven years of age at the time of the making of the deeds, was in feeble and declining health and appeared to be suffering from senility.

This court has continuously followed the rule that the burden in cases like this is upon the grantee to show that the transaction out of which the deed came was fair and free from fraud and undue influence, and that the deed was not obtained by improper methods. Gross v. Courtley, 161 Ky. 152. The substance of the evidence introduced by plaintiffs below is to the effect that the mind of Noah Meade began to fail perceptibly in the autumn of 1910, and that it grew steadily worse until his death. His physical condition was also bad in the fall and winter of 1910-1911. Many witnesses state that they saw and talked with Meade shortly before and near the time of the execution of the deeds, and that it was their opinion, from his acts, conversation and general demeanor, he was of unsound mind and incapable of understanding the nature and effect of the deeds which he made in March. He would wander away from the house without his hat or other clothing in bad weather and the family would have to bring him back; he claimed large boundaries of land to which he never had title or color in fact; proposed to erect a mill on a little brook which went dry early each summer; was unable to feed himself at the table or to dress himself. On one occasion he put his waistcoat over his topcoat and went out in the rain, bareheaded. On several occasions he exposed his person along the public highway. On the morning of the day on which some of the deeds were made he was seen by a neighbor to go out into the yard in front of the house barefooted, in his underdrawers, with his trousers on his arm, and go around the house, and this in cold weather, and a member of the family came out and took him in. His conversation was unnatural and his eyes and general appearance differed from what they had been a short time before. A local physician who attended Uncle Noah about the time of the execution of the deeds found him in

a weak physical condition and in a foggy and deranged mental state. The grantor had said upon one or more occasions that the Price boys wanted him to deed them his land but that he was not going to do it; that he did not intend for them to have his land; he was childlike in his submission to the wishes and demands of the grantees; they seemed to have complete dominion over him.

For the appellants it was shown in evidence that the grantees, Hercie and Iney Price, were kind and good to the grantor; that they lived with him and that he loved them; that he was a man of good sense and judgment and that he did not suffer from mental derangement or senility; that his conversation was sensible and his acts reasonable; that he desired his wife and stepsons to have the property because they lived with him and provided for him; that he executed the deeds freely and voluntarily, without suggestion or importunity on the part of the grantees, or any one of them; that while he was old and feeble physically, his mental condition continued good until very near his death, and for some time after the execution of the deeds; that the consideration given by Hercie Price for his tract of land was entirely adequate, he agreeing to take care of and provide for the grantor and his wife during the remainder of their lives, and that he had done so; that the consideration given by Iney Price for the tract deeded to him was sufficient in view of all the circumstances, and that the tract deeded to the wife was no more than she was reasonably entitled to as homestead or dower; that the children and grandchildren of the grantor seldom visited him, and did not provide for his needs or attend him in his last sickness.

The grantees were in the home and with and around the grantor almost constantly at the time of the execution of the deeds and for some years previous thereto. He was fast failing in health at the time in question, and many of his neighbors observed that his mind was flighty, roving and unsettled along about the time and before the deeds were made. It may be that Noah Meade was not so feeble in mind as to have been unable to understand and appreciate the nature and effect of the deeds at the time he made and delivered them, but it can scarcely be doubted that he was under the supervision, domination and control of the three grantees and their friends and relatives. A man at his age in feeble health was in no condition to withstand the overtures of kind and de-

signing persons much less that of those who lived in the
same house with him and in a measure supplied his wants
and took care of him. It may be said in answer to the
contention that Hercie Price provided means of support
for the grantor and his wife, that the farm was suffi-
ciently large and productive to have rendered a living
for the two old people, and aside from this Noah Meade
was a pensioner and received from the government a
check every three months which, if judiciously employed,
was sufficient to have supplied him and his wife with all
or nearly all of the necessities which they could not have
realized from their farm. True the widow and her sons
ministered to the wants of Noah Meade during his sick-
ness and declining days, but it is also in evidence that he
took care of and supported the boys when they were
young and unable to take care of themselves, and it was
no more than their duty to have rendered him like assist-
ance when the infirmity of years made it impossible for
him to take care of himself.

Where there exists between two or more persons a
relation of confidence and trust, by which one exerts an
influence over the judgment of the other to such an ex-
tent as to subvert the latter's will and independence, a
conveyance by the latter to the former will be set aside
as fraudulent upon seasonable complaint. Hoeb v.
Maschinot, 140 Ky. 330. It will be presumed that a deed
was obtained by undue influence where the grantor was
in feeble health, the grantee had acquired a dominating
influence over him, the deed was inconsistent with his oft
expressed intentions, and gave the grantees a great ad-
vantage over others of equal kin to grantor. Hall v.
Orme, 146 Ky. 467.

The law looks with a jealous and inquiring eye on a
deed made by an old and infirm person to a young rel-
ative or associate for inadequate consideration, where the
grantee has opportunity to influence the mind of the
grantor, especially where no reasonable provision has
been made by the grantor for his own children or near-
est blood relation. There can be little or no doubt that
Noah Meade began to fail in mind as early as October,
1910. He felt more or less dependent upon the grantees
from that time on. He was easily persuaded, impressed
and controlled. The grantees must have realized that his
health was declining, else they would not have hastened
to procure deeds from him for his land. The chancellor

had all the facts before him, and weighed them no doubt with care. Perhaps he enjoyed a personal acquaintance with these witnesses, and by the aid of all these lights, upon a consideration of the whole case, decreed a cancellation of the three deeds, and we, after a careful examination of the record, quite agree with him in his conclusions. While we are constrained to the view that the judgment is sustained by a preponderance of the evidence, yet if it were otherwise, we would not be authorized to disturb the judgment, unless it was against the weight of the evidence.

Judgment affirmed.