### Howell, et al. v. Howell's Admr., et al.

(Decided November 16, 1920.)

#### Appeal from Hickman Circuit Court.

1.  Executors and Administrators—Services Rendered to Decedent—Undue Influence—Burden of Proof.—Where a transaction in the nature of a contract is entered into between an aged and feeble person and a younger one, who has care of him, and by which the younger acquires property or things of value, the presumption of undue influence arises, and the burden of showing that the contract was not secured by any improper methods, is cast upon the one claiming under it, but this principle does not render a contract under such circumstances unenforcible, if it appears to be just, prudent and fair and does not exhibit features of unconscionable advantage taken of weakness and old age, and was understandingly and freely entered into.

2.  Executors and Administrators—Costs—Discretion.—In actions for the settlement and distribution of the estates of deceased persons, the courts have a judicial discretion in regard to costs, and a right to adjudge their payment according to the right of the case.

L. L. HINDMAN and J. D. VIA for appellants.

BENNETT, ROBBINS & ROBBINS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This was an action by the administrator of the estate of R. C. Howell, deceased, against the heirs and creditors for a settlement of the estate. The estate consisted of a very small amount of personal property and a small farm of the value of from six to seven hundred dollars. The decedent's only heirs were two sons, the

appellant, Samuel Howell, and appellee, R. L. Howell, and a granddaughter, the appellant, Myrtle Arrington, who was the child of a daughter of decedent who had died before her father. The only creditor who presented a claim against the estate was the appellee, R. L. Howell. Upon a reference of the action to the master commissioner to report the assets of the estate and to audit and report its indebtedness, the report showed the assets to be as above stated and the indebtedness to consist of a claim of seven hundred and twenty dollars in favor of R. L. Howell, which was allowed. The report was excepted to by Samuel Howell and Myrtle Arrington because of the allowance of the claim of R. L. Howell. The court after a hearing upon the exceptions overruled them, and rendered a judgment in favor of R. L. Howell against the estate for the amount of his claim, and the personal assets being entirely insufficient to pay the costs of administration and the indebtedness, adjudged that the lands belonging to the estate, be sold, and their proceeds as well as that of the personalty be distributed in the payment of the costs, and indebtedness of the estate, and the remainder to the persons entitled thereto as heirs of the decedent according to their distributive and descendible portions. It should be said that in addition to the claim of R. L. Howell, the court, also, adjudged the payment of a claim of $14.30 in favor of Myrtle Arrington, but of this the appellants do not complain. From the judgment Samuel Howell and Myrtle Arrington have appealed.

The appellants complain only of the portions of the judgment (1) that sustains the claim of R. L. Howell and directs its payment out of the assets of the estate, and (2) requires the appellants to pay the costs created by them in resisting the claim of R. L. Howell.

The claim of R. L. Howell is for board and lodging, waiting upon in sickness, caring for and washing clothing and bedding of the decedent for five consecutive years preceding his death, and is based upon an express contract, reduced to writing and subscribed by the parties. By the terms of the contract the decedent promised to pay the claimant the sum of $12.00 per month for the services mentioned and payment was to be made directly after the death of decedent, out of such estate as he might leave at his death, except that in the event there was nothing left after the payment of the claim, that $50.00 of the estate should in any event be appropriated to pay-

ing for a monument for the graves of decedent and his wife. The written memorial of the contract was not executed until after the services provided for had been rendered by claimant for decedent for forty-five months, but the writing recited that the contract had been entered into, presumably, by parol in December, 1912, and had been performed by claimant up to the time of the execution of the writing and for which decedent then owed $540.00, which he agreed to pay as above stated, and further covenanted to pay at the rate of $12.00 per month until decedent's death for a continuation of the performance of the same services for him. There is no contention that the claimant did not fully perform the stipulations of the agreement, or that the services rendered by the claimant for decedent were not amply worth the price agreed to be paid for them, but the claim is resisted upon the ground that the decedent, at the time he entered into the contract was not mentally capable of contracting, or was induced to enter into the contract by the exercise of an undue influence over him by the claimant, which the decedent on account of his age and infirmities of body and mind was unable to resist. The facts are that the writing relied upon as containing the contract was executed in the 77th year of decedent's age and about fourteen months previous to his death. In the year 1904 his son, Samuel Howell, married and removed from the home of decedent, where he had theretofore lived. His granddaughter, Myrtle Arrington, when four years of age came to reside at decedent's home, and continued so to do until in the year of 1912 when she was nineteen years of age and when she emigrated to the state of Missouri. In the meantime, the wife of decedent had died and he was left alone. He then went to the home of his son, R. L. Howell, where he lived until his death in November, 1917. There is some evidence to the effect that Samuel Howell did not desire his father to reside with him, and that decedent believed that it would not be pleasant for him there. Upon the other hand, there is evidence to the effect that Samuel Howell invited his father to make his home with him, but decedent declined, because he desired to reside near to his old home, which was near to that of his son, R. L. Howell. This incident of the controversy, however, is not material. From the time he began to reside at the home of R. L. Howell, and probably previous thereto, until his death, he was in feeble health and unable to perform any kind of labor, and complained much of his ail-

ments, and underwent as many as two attacks of pneumonia during the time, but, except at intervals, was able to and did travel about the country among his neighbors, and to towns and villages in the vicinity, and was able to be from home up until a few days before his death. There is an entire dearth of evidence conducing to prove that his son, R. L. Howell, ever at any time, brought to bear any pressure of any kind upon his father to induce him to enter into the contract, or ever undertook to influence him to that end, but these facts are of course not impressive, when the opportunity for the exertion of such influences was so ample, without the knowledge of any other person. The decedent procured the contract to be reduced to writing by someone at a neighboring town and at a time when he was not accompanied or in the presence of R. L. Howell, and it was subscribed by him and R. L. Howell in the presence of two witnesses whom decedent requested to attest their signatures, and at a time when he was physically able to travel from home. The evidence as to his mental capacity and ability to contract was contradictory and a number of witnesses gave evidence of their respective opinions pro and con, but, there was no evidence of any concrete circumstances, either in his conversations or conduct, which would indicate a failure of his mental force to the extent that he would not be able to fully understand the force and effect of the contract or prevent him from understandingly entering into it. The most, the weight of the evidence proved was that his memory of current events was not such as a young man, and that his conversation inclined to occurrences of his younger days, both of which things are the common incidents of old age, but not regarded as sure attendants of imbecility. The fact, that he caused the contract to be prepared and defined the terms of it to the draftsman precludes the idea that he did not comprehend the obligations of it. The terms of the contract were not unfair or unreasonable nor did it give to R. L. Howell any advantage over other of equal kin to the decedent. R. L. Howell under the contract could receive no more than he earned although he might receive less. The weight of the evidence proved that the services rendered under the contract by R. L. Howell exceeded in value twice the amount which under the contract he was entitled to receive. When a contract is made by an aged and feeble person with a younger one who has care of him, if the contract bestows upon the younger one a conveyance of property or a favor of value,

a strong presumption of the exercise of undue influence arises, or if the nature of the transaction is such as to create a suspicion of undue influence having been exerted, the burden will be cast upon the one claiming, under such contract, to show that it was not secured by any improper method, and the absence of undue influence in its procurement. Shields v. Burge, 171 Ky. 149; Bozarth v. Bannister, 143 Ky. 136; Hall v. Orme, 146 Ky. 467; Smith v. Snowden, 96 Ky. 32; Kelley v. Field, 167 Ky. 796; Jacobs, Extr. v. Meyers, 185 Ky. 594; Gross v. Courtley, 161 Ky. 152; Price v. Meade, 182 Ky. 814. While a contract made by an aged and feeble person with one who has care of and occupies a confidential relation to him is viewed with suspicion, the principle enunciated above does not render unenforcible every contract made between such persons. If a contract between such persons is just and fair and exhibits no features of unconscionable advantage upon the one hand, nor want of prudence upon the other, and thus dispels the presumption of its procurement by improper methods, there is no reason why it should not be upheld, if understandingly entered into, and in the absence of evidence of the actual exertion of undue influences. The chancellor held the contract in the instant case to be enforcible, and there appears no reason to disturb his judgment.

(b) The contest touching the claim of R. L. Howell was really a contest between the claimant upon the one side and the appellants upon the other, and no others had any interest in it. Section 889, Kentucky Statutes, provides that in actions for the settlement and distribution of the estates of deceased persons, the courts shall have a judicial discretion in regard to costs. But for the unsuccessful effort of the appellants to defeat the claim, the costs made by them would not have been incurred, nor would R. L. Howell have been forced to incur the costs made by him in sustaining the claim. Hence there is no reason why appellants should not be adjudged to pay such costs outside of what were necessarily made in an action for the settlement of the estate.

(c) Certain other objections to the validity of the judgment are made, but they do not relate to the merits of the action and are so well settled, contrary to the contentions of appellants, that it is unnecessary to advert to them.

The judgment is therefore affirmed.