## Thompson, Jr. v. Thompson, et al.

(Decided June 19, 1925.)

### Appeal from Carroll Circuit Court.

1.  Deeds—Evidence Insufficient to Show that Conveyance of Aged Father was Free and Fair.—At suit to set aside conveyance, executed by 86 or 87 year old father to son with whom he was living, shortly before his death, evidence held insufficient to sustain burden of proof upon grantee to show transaction was free and fair.

2.  Evidence—Mental Condition for Several Years Before Conveyance May be Shown in Action to Set it Aside.—In action to set aside conveyance by an aged person alleged to be childish, on grounds

of undue influence, condition of grantor's mind may be shown by acts for several years before conveyance.

3. Deeds—Burden is on Grantee From Aged Person to Show Transaction was Free and Fair.—In suit to set aside conveyance from aged person alleged to be childish, burden is on grantee to show that transaction was free and fair.

J. A. DONALDSON & SONS for appellant.

WINSLOW & HOWE for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

Sim Thompson, Sr., died a resident of Carroll county intestate on November 29, 1922, leaving surviving him seven children and one grandchild, the only living child of a deceased son. After his death this suit was brought by six of the children and his grandson, against Sim Thompson, Jr., who was the youngest child, to set aside a deed executed by their father to him on September 4, 1922, for a tract of land containing about 130 acres, which he owned. The plaintiffs charged in their petition that their father was incompetent to make a deed and that the deed was procured by undue influence. The allegations of the petition were controverted, voluminous proof was taken and on final hearing the circuit court entered a judgment setting aside the deed on the ground that the grantor, because of his extreme age and physical and mental disability, had not sufficient mind or memory to know his estate or the value thereof or the objects of his bounty and his duty to them, or to take a rational survey of the estate and dispose of it according to a fixed purpose of his own. The defendant appeals.

The proof shows that the father was between eighty-six and eighty-seven years of age. He had suffered for many years from dropsy; his heart was affected; his knees were bad from rheumatism; he walked with two canes. As shown by the proof for the plaintiffs he had no more mind that a child eight or ten years old. He was subject to mental aberrations. One evening his two daughters, who were sitting on the porch, heard him whetting his knife and watched him. As soon as he got it whetted he started to his wife's head to cut her head off. One of the daughters rushed in between and jerked her mother, who was asleep, out of his way just in time to save her. His wife died about two years before his death. After his wife's death one of his sons lived there

with him for about a year. During this time he had to be taken care of as a child and could not.be trusted to be alone. At the end of the year the son rented another place and got a tenant to come and live with his father, but the cooking did not suit the old man; he and the tenant got along badly and finally a daughter, who lived in Indiana, on the opposite side of the Ohio river, agreed to take him to her house and take care of him, the other children agreeing that she should be paid out of the estate $1.50 a day for so doing. He remained at her house for ten months. He then expressed a desire to go and see some of his other children. He then went to another son's at Sparta, Kentucky, and stayed there about two months, on the same arrangements as to pay, but at the end of that time the son's wife was taken seriouly sick so that they could not look after him and at the request of the family Sim Thompson, Jr., came up to see his.father and at his invitation his father was taken to the house of Sim Thompson, Jr., on August 28, 1922. Six days later or on September 4th the deed in question was made. The son who lived in the house with his father after his mother's death, the tenant who followed him, the daughter at whose house he lived in Indiana and the son at whose house he lived when he left there and all their neighbors unite in saying that the old man was very childish; that anyone could persuade him to do anything and that he would change his mind many times a day. When in Indiana he thought he owned the place where he was and also all the land around him. He thought he was on Eagle creek in Kentucky and would often say that he never expected to see steamboats going up Eagle creek. He could not safely be left alone; someone had constantly to watch him, because there was no telling what he would do and he often did not know what he was doing. The persons who took him to Indiana, the persons·who took him to his son's and the persons who brought him from his son's to the house of Sim Thompson, Jr., unite in saying that he did not know what he was doing. One person could not take him in a car, for there had to be another person along to help control him. He did not know his old home when he passed it. At different times while in Indiana he had proposed to two or three of his children to make him or her a deed to the property but each of them declined to allow him to do so because of the weak condition of his mind. The tract of land, according to the proof for the plaintiffs,

was worth about $8,000.00 and they had been offered that much for it. The income from the land was about $500.00 a year. According to the proof for the defendant the land was not worth more than $3,600.00. One of the sons attended to the renting of the land and the collecting of the rent and placed the money in bank to his father's credit. The father gave checks by making his mark. He could not write his name and the proof is conflicting whether this was due to his old age or want of education.

On the other hand, the proof by Sim Thompson, Jr., and a number of witnesses, who saw the old man after he reached Sim's house, is to the effect that his mind was entirely normal; that he proposed to his son Sim to make the deed, and before it was made talked it over with several of his neighbors, and on the day it was made he and Sim went to Carrollton and had the deed drawn. The lawyer who drew the deed, the clerk who took the acknowledgment and a number of people who saw him that day testify that he was in the full possession of his faculties and normal.

It is earnestly insisted that the capacity of the grantor must be determined by his condition at the time the instrument is executed, but his condition for several years before and shown to be continuous up to the time in question is also to be considered. Persons who meet an old person who is childish frequently see no evidence of childishness in a casual meeting. But the actual condition of the mind may be shown by the acts of the person at other times, continuing down to the time in question. If this old man for the ten months he spent in the house with his daughter was in the condition that the witnesses there portray, he had lost the power to control himself and was without capacity to make contracts of any kind. The same is true of the testimony of the witnesses as to his conduct at his son's house in Sparta. A childish old man is not born again in a day and if he was in the condition described by these witnesses in Jefferson county, Indiana, or Sparta he was incompetent to transact business. The law does not favor a deed made by a father or mother in extreme old age and weakness to a son with whom the parent is living and on whom he is dependent. Such a relationship opens the door for the weak to be imposed on. Such transactions are closely scrutinized and are not sustained unless upon adequate consideration and fairly made.

Sim Thompson, Jr., was living upon rented land. By this deed he acquired the title to all the property his father had at his death and the use of it while his father lived in consideration of taking care of his father as long as he lived.   The father in fact died in less than three months. To sustain such a transaction in view of the proof of the childish condition of the old man and the refusal of three of the children theretofore to accept a similar deed from him would be to ignore the rule that under such circumstances the burden of proof is upon the grantees to show that the transaction was free and fair, and to ignore the convincing evidence given by many witnesses that the old man could easily be induced to do anything by anyone who would humor him and that he would change his mind many times a day, and did not know afterwards what he had done.   There is no necessary conflict between this testimony and that given by the witnesses for the defendant; for the latter saw him casually for a short time or when he did not exhibit his weakness.

"It often happens that a sick man's mind is apparently sound, when by reason of his weakness, the will has lost its power to assert itself." Hall v. Orme, 146 Ky. 471.

"The law likes to uphold contracts that are made when people are dealing at arm's length, when each one of them is able to take care of his own interests, and when one is as able to understand the nature and effect of the transaction as is the other.   But when one of the parties is old or feeble or weak, and the other is strong and vigorous, or when relations of extreme confidence and affection exist, the parties do not occupy toward each other that attitude of business freedom that would enable each to deal with the other on equal terms, and hence the protecting care of the courts." Gross v. Courtley, 161 Ky. 158.

"It may be that Noah Meade was not so feeble in mind as to have been unable to understand and appreciate the nature and effect of the deeds at the time he made and delivered them, but it can scarcely be doubted that he was under the supervision, domination and control of the three grantees and their friends and relatives.   A man at his age in feeble health was in no condition to withstand the overtures of kind and designing persons, much less that

of those who lived in the same house with him and in a measure supplied his wants and took care of him." Price v. Meade, 182 Ky. 817.

Judgment affirmed.