## Briscoe, et al. v. Briscoe et ux.

(Decided October 16, 1928.)

## Appeal from Scott Circuit Court.

1. Deeds.—Court looks with suspicion on transaction between persons sustaining confidential relation to each other, and burden is on person receiving property under such circumstances to establish that transaction was freely and voluntarily entered into, that it was fair and equitable, and that grantor was mentally competent to understand nature thereof.

2. Deeds.—Evidence held sufficient to sustain chancellor's finding that deeds from aged grantor to her eldest son, who managed her property, were voluntary, and that grantor was competent, though consideration therefor was much less than value of property.

3. Appeal and Error.—When there is substantial evidence to support findings of chancellor, and Court of Appeals is in doubt as to whether the clear weight of the evidence is against his findings, chancellor's judgment will not be disturbed.

FORD & FORD for appellants.

LLEWELLYN F. SINCLAIR for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Laura C. Briscoe died in April, 1926, at the age of 73 years, and left surviving her three children, Bryan, Briscoe, Allie P. Briscoe, and Lorena B. Cook. The husband of Laura C. Briscoe departed this life about 15 years before her death. Thereafter she resided with her two sons in Georgetown. Lorena married and moved to Lexington. At the time of her husband's death, Mrs. Briscoe owned three tracts of land in Scott county, one containing about 13 acres, another about 55 acres and another about 223 acres. There appears to be some disagreement as to whether she owned the last-mentioned tract in fee or only two-thirds of it in fee and a life interest in the remaining one-third, but that question is not material to the issue raised in this case.

Mrs. Briscoe appears from the evidence offered by the appellants to have been a frail woman, suffering with infirmities which increased with her advancing years. The appellee Bryan Briscoe appears to have been the head of the household after the death of his father. In fact there is some evidence that he had been such for some years prior to the death of his father. Bryan looked after the management and control of the property be-

longing to his mother for many years.  So far as this record discloses there was no disagreement among the family, as he managed the property of his mother, provided for the family, paid the bills, and maintained a general supervision over the affairs of the household.

After the death of the mother, the two sons continued to live together at the home which had been occupied by them for many years until February, 1927, when Bryan married.  The personal property belonging to the estate was then divided among the three children.  It is claimed by Allie and Lorena that they then for the first time discovered that their mother had, on July 16, 1923, conveyed to Bryan the 13-acre tract of land for a recited consideration of $1 and other good and valuable considerations, and that on August 9, 1923, she had conveyed to him the 55-acre tract for the recited consideration of $1,356.20, and at the same time she had conveyed to him her life estate in the 223-acre tract.  Immediately thereafter, which was two days after Bryan married, this suit was instituted against the appellee seeking to have the deeds set aside on the grounds that they were procured by Bryan for an inadequate consideration at a time when his mother, owing to physical infirmities and illness, was not mentally competent to make a deed, and because of undue influence and fraud practiced upon her by her son Bryan.  The chancellor denied the prayer of the petition.

The argument is advanced by counsel for appellants that this court has uniformly held that, when confidential relations exist, the burden is upon the defendant to show that the transaction was entirely free from any inequitable incidents.  It is true that the law books with suspicion upon a transaction between persons sustaining confidential relations towards each other, and the burden is on the person receiving property under such circumstances to establish that the transaction was freely and voluntarily entered into, that it was fair and equitable, and that the one making the conveyance was mentally competent to understand the nature of the transaction. These principles are well set out in many cases, among which may be mentioned Davidson v. Davidson, 180 Ky. 190, 202 S. W. 493; Kelly v. Fields, 167 Ky. 796, 181 S. W. 657; Smith v. Snowden, 96 Ky. 32, 27 S. W. 855, 16 Ky. Law Rep. 353; Shacklette v. Goodall, 151 Ky. 20, 151 S. W. 23; Howell v. Howell's Adm'r, 189 Ky. 556, 225 S. W. 477; Roberts v. Parsons, 195 Ky. 274, 242 S. W. 594;

Watson v. Watson, 190 Ky. 270, 227 S. W. 270; Thompson v. Thompson, 209 Ky. 677, 273 S. W. 522; Price v. Meade, 182 Ky. 814, 207 S. W. 697.

We have no desire to depart from the principles announced in these cases, and the only question before us here is to determine whether the facts and circumstances appearing of record show that appellee Bryan Briscoe has met the burden of proof as required in the cases cited. The case therefore turns on a question of fact.

The evidence for the plaintiff goes no further than to show that Mrs. Briscoe was a frail woman, sick much of the time, and that she had been suffering with tuberculosis for some years prior to her death. Some of these witnesses stated that, in their judgment, owing to her weakened physical condition, she was not capable of transacting her business. The evidence of the witnesses offered by appellants tends to show that she was a woman who remained at home nearly all the time, and that she had little, if anything, to do with her own business affairs. There is no evidence of undue influence. It is true there is evidence that Bryan looked after the affairs of his mother and assumed general control and management of what went on about the place. He operated the farms, provided for the household, and exercised a general superintendency over the estate of his mother. His sister and his brother resided in the home, and there is no proof that they ever made any complaint about his management of the affairs. Neither is there any proof that Mrs. Briscoe at any time offered any objection to the control of her affairs by her son except on one occasion she expressed her disappointment that Bryan had cleared and cultivated some land which she thought should have been left as woodland. It is shown that on one occasion Bryan stated to a witness that his mother had asked him for $50, and stated that he wondered what she wanted with it, saying at the time that, if she wanted it for herself, he would be very glad to give it to her, but, if she wanted to give it away, he would not give it to her.

It is shown by the evidence that the land which was conveyed to Bryan was worth between $130 and $150 per acre, and the consideration expressed in the deed was an inadequate consideration, or at least a consideration much below the actual value. If Mrs. Briscoe was mentally capable of transacting her business and executed the deeds voluntarily and uninfluenced by her son, the

property belonging to her, she had the right to accept what consideration she would for the property.

Turning now to the evidence offered by the appellees, we find that many witnesses testified that Mrs. Briscoe was a woman of good mind, capable of understanding the nature of her property and disposing of it after having given intelligent consideration to her proposed actions. The appellee well met the burden on the question of the mental capacity of his mother. But it is argued that it was not sufficient merely to show that his mother was mentally capable of executing the deeds, but that he must go further and establish that she executed the deeds as a result of her own voluntary action, uninfluenced by any conduct on the part of her son. Taking into consideration the circumstances surrounding all of the parties at the time of the transactions, we find enough in the record to enable the court to reach a conclusion that Mrs. Briscoe acted freely and voluntarily, and that the transaction was free from inequitable incidents. It must be borne in mind that there is no direct proof that Bryan Briscoe did anything to cause his mother to execute these deeds to him other than that which is expressed in the deeds themselves. He had lived with his mother, acting as the head of the household, until he was 43 years old, at which time his mother died. The brother and the sister lived with him, and were in constant contact with him and his mother, and fully knew all that he was doing. There is no proof that any of them at any time made any complaint about his management of the affairs. The deeds were executed three years prior to the death of Mrs. Briscoe. They were placed on record in the office of the Scott county court on the day of their execution. Mrs. Briscoe had three years in which to raise any question about the transaction if she so desired, and her silence indicates her satisfaction with what she had done. The brother and sister residing in the homestead had constructive knowledge that the deeds had been executed, and they took no step to make any question about it until more than a year after the death of their mother. It is true that they claim they did not know about it. If this is true, it serves to show that they had full confidence in their brother, and he had done nothing to arouse their suspicion that he was taking an unfair advantage of their mother or them. Two days after Bryan married, the brother and sister instituted this suit, which is a circumstance tending to show that

they remained satisfied with his conduct until the old bachelor brother took unto himself a wife. He had purchased the interest of his sister in the estate, for which he had paid $25,000. His brother continued to live with him after the death of their mother and after his marriage. It was testified on the trial of this case that the brother prosecuting the suit against him was still residing with him in the home.

The chancellor had the right to take into consideration all of these circumstances in arriving at a conclusion as to the validity of the transaction. He found that the appellee Bryan Briscoe had established that the execution of the deeds was the free and voluntary act of Mrs. Briscoe, that she was mentally competent to execute them, and that the whole transaction was free from inequitable incidents. We must give weight to the judgment of the chancellor in such matters. He knew the litigants and the witnesses, and was much more capable of weighing the circumstances than this court. We may sometimes disagree with the conclusions of the chancellor, but, when there is substantial evidence to support his findings and we are in doubt as to whether the clear weight of the evidence is against his findings, we follow the rule that the judgment of the chancellor will not be disturbed. This is such a case.

Some question is raised as to whether the deed to the 55 acres conveyed more than a life estate; the deed shows clearly that the entire interest in fee was conveyed.

Judgment affirmed.

Whole court sitting.