Emoline **FORTNEY** et al., Appellants,

v.

**A. J. ELLIOTT'S ADMINISTRATOR** (John Mahan), et al., Appellees.

Court of Appeals of Kentucky.

Nov. 19, 1954.

J. B. Campbell and Carlos B. Pope, Barbourville, for appellants.

J. J. Tye and H. T. Tye, Barbourville, for appellees.

MILLIKEN, Justice.

This is a suit by the administrator of the estate of A. J. Elliott, to settle the estates of nine decedents, seeking a judgment ordering the sale of certain lands, all of which at one time belonged to one Henry Elliott and wife. Also involved are the claim of intervenors, Steve and Jessie Mahan, for services rendered one of the decedents before her death, and the validity of a deed made by one of the decedents, Biddie E. Baker, to appellant G. S. Fortney.

Henry Elliott, owning three tracts of land, died intestate in 1915, survived by his widow and nine children. His widow, owning a tract of land, died intestate in 1921 or 1925, survived by the nine children. Thereafter and prior to the institution of this suit, some of the children conveyed their interests in the estates of their father and mother to other of the children and some died intestate, their interests descending to those surviving. At the time of the institution of this suit to settle the estates of Henry Elliott and his wife and children, the one surviving child was appellant Emoline Fortney. The trial court, after hearing much evidence and considering numerous deeds, entered a judgment ordering the sale of the four tracts of land and a distribution of the proceeds, allowed the claim of the intervenors, Steve and Jessie Mahan, blood relatives of the administrator, and set aside the deed made by Biddie E. Baker to appellant G. S. Fortney. From this judgment the appellants prosecute this appeal.

While the case was here on appeal, appellant G. S. Fortney filed six deeds which had been newly discovered and which were not introduced or referred to on the trial below. It is a fundamental rule of appellate practice that after a final judgment has been rendered in the circuit court no additions to the record can be made of matters which were not before the trial court when the judgment was rendered. Crook v. Schumann, 293 Ky. 334, 168 S.W.2d 1004; Hibbard v. Estridge, 153 Ky. 439, 155 S.W. 741. The case must be tried in this court on the record as it was presented to the trial court. If any part of the record that was made before the trial court is lost or destroyed it may be supplied, but additions cannot be made to the record of matters not considered by the trial court in rendering its judgment. See CR 60.02, 61.02, and 75.08.

Turning now to the claim for services filed by the intervenors, Steve and Jessie Mahan: They do not rely on an express contract, but ground their right of recovery on a contract implied in fact. (For distinction between contracts implied in law

and contracts implied in fact, see Kellum v. Browning's Adm'r, 231 Ky. 308, 21 S.W.2d 459). From uncontradicted testimony, it is clearly established that the decedent, Biddie E. Baker, came to the home of the intervenors, her niece and nephew, in February, 1945, and remained there until the day of her death in January, 1946; that while there she was suffering from extreme old age and a broken hip, was bedfast the whole time, unable to feed herself, and had to be waited on constantly both night and day by one or the other of the appellees; that she soiled her linens frequently, necessitating changes of clothing and bedclothes; that Jessie did all of the laundry work for her, supplied her with special groceries, medicines and medical care, and that the decedent always expressed satisfaction with the treatment and attention she was receiving at the hands of intervenors and said a number of times: "Honey, you will get paid for waiting on me." At no time was any payment made except that $250 was given to the child of intervenors. There is also evidence that decedent had intervenors draw money from her burial account, but they emphatically testified that this was delivered to the decedent and there is no evidence to the contrary. The jury found for intervenors in the sum of $1,036, which the trial judge credited with the $250 given to the intervenors' daughter.

Upon the trial, the intervenors were permitted to testify as to the length of time they waited on decedent, the nature and extent of her injuries, the character of services which were rendered, and that they had not been paid therefor. This court has repeatedly held that under KRS 421.210(2)— formerly Civil Code of Practice, Section 606 (2)—no person shall testify for himself concerning any verbal statements or any transactions with or any act done or omitted to be done by one who is dead, and that it is error in an action for services rendered to a decedent to permit the party to testify that she was present with decedent a great part of the time, that decedent was in poor health, to describe and place a value on the services rendered and to describe the ailments and the amount of care required.

Stone's Adm'r v. Woolbright, 274 Ky. 372, 118 S.W.2d 746; Ashabraner's Ex'r v. Owens, 267 Ky. 728, 103 S.W.2d 283; Duke's Adm'r v. Patton, 264 Ky. 598, 95 S.W.2d 249; Northrip's Adm'r v. Williams, 100 S.W. 1192, 30 Ky.Law Rep. 1279. See, also, Notes 41 Ky.Law Journal 341, and 155 A.L.R. 961.

In the case before us, the mere fact that the condition of Mrs. Baker was known by a number of other persons, who described her condition and the type of services rendered by these appellees, does not alter the problem. The appellees testified more fully than any other witnesses as to the condition of decedent, the type of services rendered and the value of these services. If appellees' evidence as to services performed conduced to establish their claim or tended to influence the jury in fixing the amount that should be allowed, it was both incompetent and prejudicial. That it had this effect we have no doubt. The uniform tendency of this court has been to restrict persons in interest from giving testimony in their behalf against decedents' estates. The judgment of the trial court as to the claim for services is reversed.

Turning now to the question of the validity of the deed made by Biddie E. Baker to appellant George S. Fortney: Much evidence was introduced on the trial both to attack and affirm its validity, much of which was unnecessary. Appellant Fortney was the nephew of Biddie Baker, and, according to his own testimony, he visited her only once or twice yearly; he never cared for her or provided her with any of the necessaries of life, nor did he attend her funeral even though present in the community. At the time the instrument was drafted, he claims that he went to the home of Mrs. Baker, obtained directions as to how she wished the instrument drafted and returned with the typed instrument, along with witnesses and a notary. It is claimed by Fortney and witnesses produced by him that the instrument was read to Mrs. Baker and that she voluntarily signed it. However, the testimony of other witnesses who were pres-

ent is otherwise. They testified that Mrs. Baker did not have sufficient mental capacity at the time to know the nature of the instrument she was signing, that she attempted to sign at the top and was stopped by appellant, that the instrument was never read to Mrs. Baker, and that after appellant left her she inquired as to what his purpose was and wondered what "those papers were." Many witnesses testified concerning her acts and conduct, and gave as their opinion that for a period of at least five years before her death she was mentally unbalanced and their evidence indicates that she did not have mental capacity sufficient to know and appreciate the value or quality or the consequences of business transactions. Also it should be mentioned that at no time during the following year and a half did she relate to anyone that she had made the alleged instrument. The trial court set aside and canceled the deed, hence this appeal.

The power reposed in courts of equity to set aside deeds solemnly entered into between the parties is an extraordinary one and is a power not lightly exercised. Lacey v. Layne, 190 Ky. 667, 228 S.W. 1. The burden of establishing mental incapacity and undue influence is upon the person who asserts and relies upon it. Generally speaking, one possessed of mental capacity sufficient to apprehend what he is doing and to know and appreciate the character and consequence of his acts may, in the absence of fraud or undue influence, dispose of his property in any manner he may choose and give his land to relatives or others or sell it for an inadequate consideration. Risner v. Risner, 261 Ky. 359, 87 S.W.2d 970.

George Fortney bore a confidential relationship to the decedent as her nephew, and where such confidential relation exists and a conveyance so beneficial to the grantee is made, the burden is upon the one thus benefited to show that the grantor acted freely and voluntarily and to establish by clear and convincing evidence that the transaction was fair and equitable. Petrey's Adm'r v. Petrey, 262 Ky. 222, 90 S.W.2d 4; Briscoe v. Briscoe, 225 Ky. 804,

10 S.W.2d 294. In view of the method and circumstances under which the deed was prepared, we are of the opinion that the judgment of the trial court is correct.

There is a question raised as to the validity of a will which was executed in 1944 on the same date as the deed, but since no appeal was taken to the Circuit Court from the probation of the will, we forego a ruling on that matter.

The judgment as to the claim for services is reversed, that as to the validity of the deed is affirmed, and that part of the judgment decreeing the sale of the property is affirmed.