RENDERED: OCTOBER 23, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0277-DG

ROBERT BRAUN                                                          APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2023-CA-0636
FAYETTE CIRCUIT COURT NO. 21-CI-03016

BEARMAN INDUSTRIES, LLC AND                                          APPELLEES
TOP DOLLAR PAWN, LLC

**OPINION OF THE COURT BY JUSTICE BISIG**

**REVERSING IN PART AND REMANDING**

In this case we consider whether a Kentucky court may assert personal jurisdiction over an out-of-state gun manufacturer for claims alleging that the manufacturer's firearm injured a Kentucky resident. The lower courts concluded the plaintiff failed to show that the manufacturer had sufficient minimum contacts with Kentucky as required to exercise personal jurisdiction. However, we conclude that the manufacturer's failure to comply with its discovery obligations deprived the plaintiff of an ample opportunity to conduct and complete jurisdictional discovery, and therefore reverse in part and remand for further jurisdictional discovery.

**FACTUAL AND PROCEDURAL BACKGROUND**

Appellee Bearman Industries ("Bearman") is a Utah limited liability company with a principal place of business in Salt Lake City. Bearman manufactures firearms and sells them on a wholesale basis to distributors located in Texas, Louisiana, Alabama, Florida, and Tennessee. Those distributors then sell the firearms to merchants in various states.

Bearman sold one such gun, a Derringer-style 9 mm pistol, to its Texas-based distributor RSR Group, Inc. ("RSR"). RSR then sold the gun to Dan's Discount Jewelry & Pawn in Lexington, Kentucky, which in turn sold the gun to an individual purchaser. Ultimately, the gun then found its way to Appellee Top Dollar Pawn ("Top Dollar"), a Kentucky company that operates a pawn shop in Lexington. In 2021, Appellant Braun purchased the gun from Top Dollar. Braun alleges that a few days later, the gun unexpectedly discharged while the safety was engaged. The bullet fired into Braun's left hand, resulting in severe and permanent injuries.

On October 5, 2021, Braun filed products liability claims against Bearman and Top Dollar in Fayette Circuit Court. On December 7, 2021, Braun sent discovery requests to Bearman. Bearman responded to Braun's requests for admissions on January 3, 2022. However, Bearman failed to respond to Braun's interrogatories and requests for production of documents. Instead, Bearman filed a motion to dismiss for lack of personal jurisdiction on February 23, 2022. On March 10, 2022, the trial court held the motion to dismiss in abeyance to provide the parties with an opportunity to conduct

2

limited discovery.  Braun thereafter issued subpoenas to third parties in an effort to trace the provenance of the gun at issue and how it came to be in Kentucky.  However, Bearman continued to fail to respond to Braun's interrogatories and requests for production of documents.[1]

On August 31, 2022, Braun filed a motion to compel Bearman's responses to the pending discovery requests.  The trial court granted that motion and ordered Bearman to respond by December 19, 2022.  Bearman ultimately provided responses to the original discovery requests on January 5, 2023.

In March 2023 Bearman asked the trial court to rule on its pending motion to dismiss.  In support of its motion, Bearman had provided an affidavit of its sole member-manager Jared Yeates stating that Bearman 1) does not and has not regularly conducted business in Kentucky, 2) is not licensed or registered to do business in Kentucky, 3) has no employees and does not lease or own real or personal property in Kentucky, 4) does not and has not sold its product to persons or entities in Kentucky, 5) has no business contracts or agreements for distribution in Kentucky, 6) does not and has not advertised in

---

[1] Civil Rule ("CR") 12.02 provides that "[n]o defense or objection is waived by being joined with one or more defenses or objections in a responsive pleading or motion."  The Rule thus eliminated the former distinction between general and special appearances, and the associated risk of a party inadvertently waiving a challenge to personal jurisdiction by entering a general rather than a special appearance, *i.e.* by responding on the merits rather than responding only for the limited purpose of challenging personal jurisdiction.  Thus, under CR 12.02, "if a party takes some step in an action that prior to these Rules would have constituted a general appearance, he or she is not precluded from raising the question of . . . personal jurisdiction."  David V. Kramer, *Kentucky Practice, Rules of Civil Procedure Annotated* Rule 12.02. (2025).  As such, Bearman's responses to Braun's discovery requests would not have operated as a waiver of Bearman's personal jurisdiction challenge.

3

Kentucky, 7) does not target websites towards Kentucky, and 8) does not solicit business in Kentucky or "derive any direct revenue" from any product used or consumed or service rendered in Kentucky. Due to Bearman's lack of cooperation in the discovery process, Braun was not given an opportunity to challenge these statements.

Nonetheless, in opposition to Bearman's motion, Braun had submitted evidence that the gun at issue had been sold by Bearman to RSR, who then sold it to Dan's Discount Jewelry & Pawn, where it entered the stream of commerce in Kentucky and ultimately was purchased by Braun. Braun also offered an RSR web page showing that Kentucky falls within RSR's Northeast sales region. Braun further pointed to publicly available information from the websites of various Kentucky merchants showing that Bearman's guns were sold in Kentucky.[2] Top Dollar also opposed Bearman's motion, providing publicly available information from various Kentucky merchant websites showing that at least 60 Bearman-manufactured firearms were available for purchase in Kentucky on the date of that particular search.

---

[2] In the present appeal, Braun offers for the first time that he learned from discovery in a separate federal lawsuit that Bearman receives monthly reports reflecting the sale of its guns in Kentucky by RSR, and that those numbers reflect that Kentucky is Bearman's fifth-largest market in the country. However,

> [i]t is a fundamental rule of appellate practice that after a final judgment has been rendered in the circuit court no additions to the record can be made of matters which were not before the trial court when the judgment was rendered. The case must be tried in this court on the record as it was presented to the trial court.

*Fortney v. Elliott's Adm'r*, 273 S.W.2d 51, 52 (Ky. 1954) (internal citation omitted). We therefore do not consider Braun's newly offered evidence.

4

On March 22, 2023—and despite the fact that Bearman had only recently begun to respond to Braun's discovery requests—the trial court entered an order granting Bearman's motion to dismiss. No evidentiary hearing was held. The trial court concluded that Bearman's activities did not bring it within the scope of Kentucky's long-arm statute because Bearman had not purposefully availed itself of the privilege of doing business in Kentucky. The trial court further concluded that an assertion of personal jurisdiction over Bearman also would not comport with federal due process requirements because Bearman merely manufactured a gun that had ultimately ended up in Kentucky.

Braun appealed and the Court of Appeals affirmed. Unlike the trial court, the appellate court concluded that Bearman's activities brought it within the scope of the long-arm statute because Bearman derived substantial revenue from the sale of its guns in Kentucky.[3] However, the appellate court agreed with the trial court that the assertion of personal jurisdiction over Bearman nonetheless would offend due process. More particularly, the Court

---

[3] As discussed in further detail below, at the time in question Kentucky's long-arm statute set forth a number of ways in which an out-of-state defendant could fall within the scope of the statute, including in relevant part by certain activity that resulted in the derivation of substantial revenue from goods used or consumed or services rendered in the Commonwealth. Kentucky Revised Statute ("KRS") 454.210(2)(a)(4), (5) (effective June 27, 2019 to July 14, 2024). However, in 2024 the General Assembly amended the long-arm statute so that it now reaches *any* activity so long as the assertion of personal jurisdiction would be "consistent with the Constitution of Kentucky and the Constitution of the United States." KRS 454.210(2) (effective July 15, 2024). Thus, the long-arm statute now reaches any activity so long as the assertion of personal jurisdiction would comport with due process and other constitutional requirements. References hereinafter to KRS 454.210 will be to the version in effect from June 27, 2019 to July 14, 2024 unless otherwise indicated.

5

of Appeals concluded that Bearman did not have the necessary minimum contacts with Kentucky because it merely placed its guns in the stream of commerce, without evidence of any additional action showing a purposeful and intentional effort by Bearman to have its guns distributed in Kentucky. We granted discretionary review, heard oral argument, and now reverse in part and remand to provide Braun with an opportunity to conduct and complete jurisdictional discovery before a ruling on Bearman's motion to dismiss.

## ANALYSIS

The issue of whether a Kentucky court may exercise personal jurisdiction over an out-of-state defendant raises questions of law which we review *de novo*. *Hinners v. Robey,* 336 S.W.3d 891, 895 (Ky. 2011). The plaintiff bears the burden of showing that an assertion of personal jurisdiction over the out-of-state defendant is proper. *Id.* Where, as here, the trial court does not conduct an evidentiary hearing, the plaintiff may satisfy that burden by making "a prima facie showing of jurisdiction." *Id.* (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996)).

In determining whether personal jurisdiction may be asserted over an out-of-state defendant under the version of our long-arm statute that was in effect at the time relevant to this appeal, a trial court must ask two questions:

> First, review must proceed under [the long-arm statute] to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over

6

the non-resident defendant offends his federal due process rights.

*Caesars Riverboat Casino, LLC v. Beach,* 336 S.W.3d 51, 57 (Ky. 2011).[4] We therefore must consider whether Braun demonstrated to the trial court that 1) Bearman falls within the long-arm statute, and 2) the exercise of due process over Bearman would comport with due process.

I. **The Evidence Was Sufficient To Demonstrate That Bearman Falls Within The Long-Arm Statute.**

Here, Braun asserts that Bearman falls within the long-arm statute provision reaching an out-of-state defendant who causes "tortious injury in this Commonwealth" and who "derives substantial revenue from goods used or consumed or services rendered in this Commonwealth," provided the tortious injury arises out of that revenue-generating conduct. KRS 454.210(2)(a)(4). Braun also contends Bearman falls within the long-arm statute provision reaching an out-of-state defendant who causes

> injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if [the defendant] also . . . derives substantial revenue from goods used or consumed or services rendered in this Commonwealth

and the claim arises from that conduct. KRS 454.210(2)(a)(5). For either of these long-arm provisions to apply, Braun was required to show that Bearman derived substantial revenue from the sale of its products in Kentucky, and that

---

[4] As noted above, KRS 454.210 was amended in 2024 such that in cases where the new statute applies, we need consider only whether an assertion of personal jurisdiction would comport with due process and other constitutional requirements.

7

his injury arose out of Bearman's conduct that resulted in the receipt of substantial revenue from Kentucky.[5]

Here, even despite Bearman's failure to cooperate in the discovery process, the record supported a finding that Bearman derived substantial revenue from the sale of its firearms in Kentucky. Braun and Top Dollar presented the trial court with evidence that Bearman firearms were available for sale by numerous merchants across the Commonwealth, including listings of at least 60 such firearms for sale on a single day by Kentucky merchants. Though the statute does not define "substantial," that term is commonly understood within a legal context to mean in relevant part "considerable in extent, amount, or value." Black's Law Dictionary (12th ed. 2024). The term may also be understood to stand in contrast to "immaterial" or "insignificant." Certainly, revenue from sales of firearms at numerous merchants across the Commonwealth and on the scale of at least 60 units for sale on a single day would not be immaterial or insignificant, but rather considerable in amount. This is true regardless of whether such revenue was received directly from sales by Bearman itself or indirectly through sales by third-party distributors and merchants. Thus, we agree with the Court of Appeals that Bearman derived substantial revenue from the sale of its firearms in Kentucky.

It is also evident that Braun's alleged injury arose out of the sale of Bearman firearms in Kentucky. We have previously held that a claim "arises

---

[5] The long-arm statute also sets forth seven other ways in which it may be satisfied, though we are not presented argument regarding those provisions.

8

from" long-arm statute predicate conduct "[i]f there is a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm-jurisdiction." *Caesars Riverboat Casino*, 336 S.W.3d at 59. Here, Braun's injury resulted from his purchase of a Bearman-manufactured firearm in the Commonwealth, and thus plainly arose from the sale of Bearman firearms in Kentucky. Accordingly, we agree with the Court of Appeals that the record established that Bearman derived substantial revenue from the sale of its products in Kentucky, that Braun's claims arose out of such sales, and that Bearman thus fell within the scope of the long-arm statute.

### II. Braun Was Not Afforded An Adequate Opportunity To Conduct And Complete Jurisdictional Discovery As To Whether The Exercise Of Personal Jurisdiction Over Bearman Would Comport With Due Process.

If an out-of-state defendant is shown to fall within a provision of the long-arm statute, the trial court next must consider whether the assertion of personal jurisdiction over the defendant would comport with due process. *Caesars Riverboat Casino*, 336 S.W.3d at 57. Due process allows for the exercise of either general or specific personal jurisdiction:

> General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant. Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state.

*Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678-79 (6th Cir. 2012) (internal citation omitted). Here, because Bearman lacks continuous and systematic

9

contacts with Kentucky, the trial court had to consider whether the due process requirements for an assertion of specific personal jurisdiction over Bearman were satisfied.

Due process permits the exercise of specific personal jurisdiction over an out-of-state defendant only if 1) "the defendant purposefully availed himself of the privilege of acting within the forum state or causing a consequence in the forum state," 2) "the cause of action arises from the alleged instate activities [or consequence]," and 3) the defendant has "such connections to the state as to make jurisdiction reasonable." *Hinners*, 336 S.W.3d at 898 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968)). Before the trial court, the parties hotly contested the first prong of this specific jurisdiction test, *i.e.* whether by using distributors who sold Bearman firearms to Kentucky merchants, Bearman had purposefully availed itself of the privilege of acting or causing a consequence Kentucky.

Where, as here, an out-of-state manufacturer places an allegedly defective product in the stream of commerce via a third-party distributor, the manufacturer may not be found to have purposefully availed itself of the privilege of acting or causing a consequence in the forum state merely by being aware its distributors would distribute its products in that state. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112 (1987). Rather, an out-of-state manufacturer's use of distributors to distribute its products in the forum state constitutes purposeful availment only if the manufacturer has engaged in conduct indicating

10

an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has *agreed* to serve as the sales agent *in the forum State.*

*Id.* (emphasis added). Thus, a manufacturer's mere knowledge that a distributor will send the product into the forum state does not constitute "purposeful availment," while an agreement with the distributor for it to specifically distribute the product in the forum state will constitute "purposeful availment."[6]

As noted above, the burden fell upon Braun to prove that Bearman could be subject to personal jurisdiction in Kentucky, including by showing that the exercise of personal jurisdiction over Bearman would comport with due process. Thus, Braun was required to demonstrate to the trial court that Bearman either had agreements with its distributors specifically for distribution of its firearms in Kentucky, or had otherwise engaged in conduct indicating an intent and purpose to serve the Kentucky market.

Notably, however—and as with other dispositive motions turning upon factual considerations—a plaintiff can be expected to meet such a burden only after first being afforded ample opportunity to conduct and complete jurisdictional discovery. *See Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky.

---

[6] This "stream of commerce plus" theory of personal jurisdiction comes from Justice O'Connor's plurality opinion in *Asahi Metal.* However, it has been adopted by the Sixth Circuit, which applies it in considering specific personal jurisdiction over manufacturers who place products in the stream of commerce via third-party distributors. *See Parker v. Winwood*, 938 F.3d 833, 840-41 (6th Cir. 2019).

2010) (noting that summary judgment is proper "only after the opposing party has been given ample opportunity to complete discovery.") (quoting *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cab.*, 758 S.W.2d 24, 29 (Ky. 1988)).  Thus, a reviewing court must consider not only whether the trial court's ruling regarding personal jurisdiction was correct, but also "whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling." *Id.*

Here, we conclude that Bearman's failure to comply with its discovery obligations deprived Braun of an ample opportunity to conduct and complete jurisdictional discovery before the trial court entered its order dismissing Bearman for lack of personal jurisdiction.  The record reveals that Braun propounded discovery requests to Bearman in December 2021.  Rather than provide a timely response, however, Bearman instead filed a motion to dismiss for lack of personal jurisdiction in March 2022.  Bearman thereafter continued to fail to provide discovery responses, resulting in an order from the trial court in November 2022 compelling Bearman to respond.  Even then, Bearman did not provide Braun with discovery responses within the time allowed by the trial court, but rather only weeks after that deadline had passed.  Shortly thereafter the trial court dismissed Bearman from the action for lack of personal jurisdiction.

Bearman of course is the best and perhaps sole source of evidence available to Braun for facts relevant to whether an exercise of personal jurisdiction over Bearman would comport with due process, including whether

12

Bearman has agreements with its distributors for the specific distribution of its products in Kentucky or has otherwise engaged in conduct indicating an intent or purpose to serve the Kentucky market. Yet Bearman refused to cooperate with the discovery process until shortly before the trial court ruled upon its motion to dismiss. As such, Bearman's refusal to comply with its discovery obligations significantly hindered Braun's ability to collect evidence from Bearman, including evidence necessary for the trial court to determine whether personal jurisdiction could properly be asserted over Bearman.

Indeed, Bearman's lack of cooperation in the discovery process has left Braun unable, at least to this point, to establish the second necessary showing for the exercise of personal jurisdiction over Bearman, *i.e.* that Bearman purposefully availed itself of the privilege of acting or causing consequences in Kentucky. We acknowledge that Bearman submitted the affidavit of its sole member-manager asserting it has no agreements with distributors to distribute its product in Kentucky. However, Bearman also failed to cooperate in the discovery process and thereby prevented Braun from challenging that assertion or otherwise inquiring into matters relevant to Bearman's relationships with its distributors or other conduct that might manifest an intent or purpose for its products to reach the Commonwealth. Quite simply, Bearman's failure to even begin cooperating in the discovery process until shortly before the trial court granted its motion to dismiss deprived Braun of the opportunity to conduct jurisdictional discovery, and certainly did not allow for an "ample opportunity" for such discovery. As such, the trial court's ruling on Bearman's motion to

13

dismiss was premature and must await an ample opportunity for Braun to complete jurisdictional discovery.

In sum, we conclude that the evidence of record was sufficient to establish that Bearman derived substantial revenue from sales of its firearms in Kentucky, that Braun's claims arise out of that conduct, and that Bearman therefore falls within the long-arm statute. And while we agree with the Court of Appeals that Braun has not *yet* shown that an assertion of personal jurisdiction over Bearman would comport with due process, we also conclude that Bearman's failure to timely meet its discovery obligations until shortly before the trial court's ruling deprived Braun of an "ample opportunity" to conduct and complete jurisdictional discovery. Absent such an opportunity, the trial court's ruling on the motion to dismiss was premature. We therefore reverse and remand with instructions for the trial court to provide Braun with an ample opportunity to conduct jurisdictional discovery and present any resulting evidence in opposition to Bearman's motion to dismiss before a final ruling.

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals' conclusion that the record was sufficient to demonstrate Bearman derived substantial revenue from the sale of its products in Kentucky, that Braun's claims arose out of such sales, and that Bearman thus fell within the scope of the long-arm statute. However, we reverse the Court of Appeals' determination that an assertion of long-arm jurisdiction would offend Bearman's due process rights

14

and remand this matter to the Fayette Circuit Court for further proceedings consistent with this Opinion. On remand, the Fayette Circuit Court shall allow Braun ample opportunity to conduct and complete jurisdictional discovery before ruling upon Bearman's motion to dismiss for lack of personal jurisdiction.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Alexandra DeMoss-Campbell
Kennedy D. Slusher
John W. Walters
Perry L. Greer, III
Golden Law Office


COUNSEL FOR APPELLEE,
BEARMAN INDUSTRIES, LLC:

R. Tracy Starnes
Bradly E. Moore
Moore, Davis, Starnes & Bliss, PLLC

Kristin Marie Lomond
Isaacs & Isaacs PSC


COUNSEL FOR APPELLEE,
TOP DOLLAR PAWN:

Christopher G. Colson
Fowler Bell PLLC